839 A.2d 870

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JOSE PENA, DEFENDANT–APPELLANT.

Argued September 9, 2003—Decided January 26, 2004.

298

*Lon C. Taylor,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Janet Flanagan,* Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey,* Attorney General of New Jersey, attorney).

Justice LaVECCHIA delivered the opinion of the Court.

This appeal concerns application of the "incomplete" mistake-of-fact defense available pursuant to *N.J.S.A.* 2C:2–4b. Defendant Jose Pena was charged with possession of cocaine and possession of cocaine with intent to distribute. His defense was that he believed the suitcase he was transporting contained stolen fur coats, not cocaine. Defendant requested that the jury be charged on his mistake-of-fact defense that, if it accepted his mistaken belief, it could convict him of the uncharged, non-lesser included offense of receipt of stolen property. We hold that it was error for the trial court to have refused defendant's request, notwithstanding that the crime of receiving stolen property is not a lesser-included offense of either charge in the indictment returned against defendant. We are constrained, therefore, to reverse and remand for a new trial.

I.

Acting on a tip, on August 25, 1995, Port Authority police officers at Newark Airport detained defendant after his arrival on a flight from Houston, Texas. A United States Drug Enforcement Agency (DEA) agent stationed in Houston had informed Port Authority officers that an x-ray taken during flight check-in indicated that defendant's suitcase contained several bundles of an apparent controlled dangerous substance. When questioned by the Port Authority officers about his suitcase, defendant stated that he had done "most of" its packing and that the bag contained "clothes and things." When asked directly whether the suitcase contained any drugs, defendant responded, "I don't know."

Defendant consented to the suitcase's search. According to the State's witnesses, defendant appeared unsurprised when that search revealed that the suitcase contained a sleeping bag wrapped around thirteen plastic bundles of seventy-five percent "pure" cocaine weighing approximately fifteen kilograms (roughly equivalent to thirty-three and one-half pounds). The cocaine was estimated to have a street value of $800,000. In addition to the

drugs, the suitcase contained a new pair of tennis shoes, two new towels, and six empty hangers. Defendant was indicted for third-degree possession of a controlled dangerous substance (CDS), in violation of *N.J.S.A.* 2C:35–10a(1) (Count I), and first-degree possession of CDS with intent to distribute, in violation of *N.J.S.A.* 2C:35–5b(1) (Count II).

Defendant's initial conditional plea to the charges was vacated on appeal. *State v. Pena,* 301 *N.J.Super.* 158, 160–64, 693 *A.*2d 1195, 1195–98 (App.Div.), *certif. denied,* 151 *N.J.* 465, 700 *A.*2d 877 (1997). The Appellate Division held that the plea lacked a factual basis because defendant had maintained his innocence by his assertion that he did not know that the suitcase contained cocaine. *Ibid.* At trial, defendant's case consisted of his mistake-of-fact defense. As background to the events that led to his arrest, defendant testified that in 1991 he had worked in a clothing store and had occasion to frequent the area of Broadway and 142nd Street in New York City. There he became acquainted with a man named "Rudolpho Santana." Defendant knew that Santana sold stolen objects such as televisions, VCRs, and expensive clothing, but he claimed he did not know that Santana sold drugs.

In August 1995, according to defendant, Santana engaged him to fly to Houston and obtain some stolen fur coats. Defendant's instructions were to pick up the coats, each worth approximately $5,000 to $6,000, and return with them via Newark Airport. In exchange, defendant would be paid $2,000. Santana supplied defendant with a ticket, purchased with cash, for a flight departing from LaGuardia Airport to Houston.

When he arrived at the Houston airport, defendant was met by a man (known to him only as "Antonio") and taken to a house. There, defendant obtained six coats that he described as medium size, full length and "furry." He testified that he packed the six coats into a single suitcase, aware at the time that he was engaging in the criminal activity of receiving stolen property. Although defendant admitted to placing the coats in the suitcase,

he claimed that he did not pack any of the other items later found in the suitcase, including the six empty hangers.

Defendant stayed overnight at the house and the next morning was taken to the Houston airport for a flight to Newark. His one-way airline ticket again was purchased for him with cash. According to defendant, his suitcase was placed in the trunk of the car for the drive to the airport but the record is unclear as to when that occurred. At the terminal, defendant checked the suitcase for the flight and, upon his arrival in Newark at the appropriate luggage carousel, he claimed the suitcase that bore his name and claim number. The Port Authority officers, who had been observing him since he disembarked the plane, then approached him for questioning.

As part of its case, the State presented an expert who explained that a courier knows when he or she is carrying CDS because, even if the courier does not know the actual drug being transported, remuneration is based on the weight (customarily "$1,000 a [kilo]") and not the identity of the substance. Defendant was carrying approximately fifteen kilograms of cocaine; therefore he could have anticipated receiving at least $15,000. The State emphasized the unlikelihood that defendant did not know what he actually was carrying and its value to him.

At the close of the evidence defendant requested a jury instruction on the incomplete mistake-of-fact defense available pursuant to *N.J.S.A.* 2C:2–4b. Defendant acknowledged that the "mistaken" offense, receipt of stolen property in violation of *N.J.S.A.* 2C:20–7, was not a lesser-included offense of either of the charges in his indictment, but he did not contend that the indictment was flawed for not including the charge. Defendant asserted that if the jury believed his testimony, he should be held criminally culpable only for the "different and lesser offense" he believed he was committing because under *N.J.S.A.* 2C:2–4b, "there still can be a downgrading of an offense ..., and also a slight shift ... to ... the one that was committed."

The trial court denied the requested instruction. It viewed the *N.J.S.A.* 2C:2–4b mistake-of-fact defense as inapplicable to a non-lesser included offense and held that defendant was restricted to arguing that his mistaken belief negated the requisite state of mind for a finding of guilt on the cocaine possession charges. The court charged the jury on the elements of possession and possession with intent to distribute. No instruction was given in respect of defendant's mistake-of-fact defense; rather, the charge tracked the model jury instruction, without any molding to the facts related to that defense. Defendant registered no objection to the charge as given except to preserve for appeal the denial of the earlier charge request.

The jury found defendant guilty on both counts. The court merged the charges and sentenced defendant to the maximum term for conviction of first-degree possession with intent to distribute: twenty years' imprisonment with a ten-year period of parole ineligibility. The Appellate Division affirmed in an unpublished opinion. It agreed with the trial court that defendant's asserted mistake of fact related to his state of mind. Based on that mistaken belief, defendant could contest whether he knowingly possessed, and possessed with intent to distribute, cocaine. However, because the crime of receiving stolen property, *N.J.S.A.* 2C:20–7, is not a lesser-included offense to either of the charges in the indictment, the Appellate Division concluded that the trial court correctly declined to charge the jury on mistake of fact under *N.J.S.A.* 2C:2–4b.

We granted defendant's petition for certification "limited to the issues arising out of the trial court's denial of the request to charge the jury in respect of 'mistake of fact.'" 175 *N.J.* 431, 815 *A.*2d 478 (2003).

## II.

### A.

This case concerns a matter of first impression: whether a defendant may avail himself of the incomplete mistake-of-fact

defense available under Section 2–4b of the New Jersey Code of Criminal Justice (Code) when the mistaken belief concerns commission of a non-lesser included offense to the offenses charged. Mistake of fact has been characterized as an area of law rife with confusion. See 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 5.1(a) at 575 (2d ed. 1986)(LaFave & Scott) (observing that "[n]o area of the substantive law has traditionally been surrounded by more confusion than that of ignorance or mistake of fact or law"). Thus, faced with a novel question in this uncertain area of the law affecting criminal culpability, we begin at bedrock, namely, with the accepted requirements for criminal liability: proof of "a voluntary act and a culpable state of mind [are] the minimum conditions" for imposing criminal liability. *State v. Sexton*, 160 *N.J.* 93, 98, 733 *A.*2d 1125, 1127 (1999) (citing *N.J.S.A.* 2C:2–1, –2).

■ The Code, like its " 'conceptual source,' " the *Model Penal Code (MPC)*, *Sexton, supra*, 160 *N.J.* at 94, 733 *A.*2d 1125 (quoting *Richardson v. Nickolopoulos*, 110 *N.J.* 241, 242, 540 *A.*2d 1246 (1988)), provides generally that "no person should be guilty of an offense unless the person 'acted purposely, knowingly, recklessly or negligently, as the law may require, with respect to each *material* element of the offense.' " *Sexton, supra*, 160 *N.J.* at 99, 733 *A.*2d 1125 (emphasis added) (quoting *N.J.S.A.* 2C:2–2a). *See also MPC* § 2.02(1) (same). In respect of the specific CDS possession offenses in issue, the Code provides that it is unlawful for an unauthorized person to "knowingly or purposely" possess CDS, whether with or without intent to distribute. *N.J.S.A.* 2C:35–10a, –5a(1). "A person acts purposely with respect to the nature of his conduct . . . if it is his conscious object to engage in conduct of that nature or cause such result." *N.J.S.A.* 2C:2–2b(1). "A person acts knowingly with respect to the nature of his conduct . . . if he is aware that his conduct is of that nature." *N.J.S.A.* 2C:2–2b(2). A person voluntarily possesses an object if he "knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to termi-

nate his possession." *N.J.S.A.* 2C:2–1c. As the court below duly noted during the first appeal in this matter, when used in our criminal statutes, "[p]ossession . . . signifies 'a knowing, intentional control *of a designated thing, accompanied by a knowledge of its character.'* " *Pena, supra,* 301 *N.J.Super.* at 162–63, 693 *A.*2d 1195 (emphasis added) (quoting *State v. Montesano,* 298 *N.J.Super.* 597, 612, 689 *A.*2d 1373 (App.Div.), *certif. denied,* 150 *N.J.* 27, 695 *A.*2d 670 (1997)). *See also State v. McCoy,* 116 *N.J.* 293, 298, 561 *A.*2d 582 (1989) ("In a broad sense, the term 'possession' denotes facts pertaining to the relationship between a person and an item of property, as well as the consequences that attach to those facts.").

In this case, then, a jury could not hold defendant criminally liable for the CDS possession offenses with which he was charged unless it found that he knew or was aware, at a minimum, that he possessed CDS.[1] *Pena, supra,* 301 *N.J.Super.* at 162–63, 693 *A.*2d at 1197–98. *See also Model Jury Charge (Criminal),* Possession *(N.J.S.A.* 2C:2–1) (1988); *Model Jury Charge (Criminal),* Unlawful Possession of a Controlled Dangerous Substance *(N.J.S.A.* 2C:35–10) (1988); and *Model Jury Charge (Criminal),* Possession of a Controlled Dangerous Substance with Intent to Distribute *(N.J.S.A.* 2C:35–5) (1992). Culpability requirements would appear to render that result self-evident. However, we are required to interpose into that basic culpability analysis the mistake-of-fact defense in *N.J.S.A.* 2C:2–4.

---

[1] Whether defendant must have known that he possessed a specific quantity of cocaine, as opposed to any quantity, or another form of CDS, is an issue that is not implicated in this matter. *Compare State v. Florez,* 134 *N.J.* 570, 594–95, 636 *A.*2d 1040, 1052 (1994) (holding that quantity of drugs possessed is material element of CDS offense), *with State v. Edwards,* 257 *N.J.Super.* 1, 4–6, 607 *A.*2d 1312, 1313–14 (App.Div.1992) (holding that nature and quantity of drugs possessed are not material elements of CDS offense, and that defendant's asserted Section 2–4b mistake-of-fact defense predicated on belief that drug possessed was hashish rather than cocaine was therefore inapplicable). *See also* Cannel, *New Jersey Criminal Code Annotated,* comment 3 on *N.J.S.A.* 2C:1–14 (2003)(Cannel) (discussing split of authority on whether knowledge of nature, quantity, or value of illegal contraband is material element of offense).

B.

Patterned after *MPC* § 2.04, *N.J.S.A.* 2C:2–4 provides in relevant part:

a. Ignorance or mistake of fact as to a matter of fact or law is a defense if the defendant reasonably arrived at the conclusion underlying the mistake and:

(1) It negatives the culpable mental state required to establish the offense; or

(2) The law provides that the state of mind established by such ignorance or mistake constitutes a defense.

b. Although ignorance or mistake would otherwise afford a defense to the offense charged, the defense is not available if the defendant would be guilty of another offense had the situation been as he supposed. In such case, however, the ignorance or mistake of the defendant shall reduce the grade and degree of the offense of which he may be convicted to those of the offense of which he would be guilty had the situation been as he supposed.

The meaning and application of Section 2–4a of the Code was addressed recently in *Sexton, supra.* That subsection provides for a complete defense to criminal liability based on a mistake of fact or matter of law. After reviewing our Code's adoption of the *MPC's* mental-state formulation for culpability, we concluded in *Sexton* that subsection a. was, in effect, technically unnecessary, because " '[it] simply confirm[s that n]o person may be convicted of an offense unless each element … is proven beyond a reasonable doubt.' If the defendant's ignorance or mistake makes proof of a required culpability element impossible, the prosecution will necessarily fail in its proof of the offense.' " 160 *N.J.* at 100, 733 *A.*2d at 1128 (quoting Paul H. Robinson & Jane A. Grall, *Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond*, 35 *Stan. L. Rev.* 681, 726–27 (1983) (quoting *MPC* § 1.12(1) (Proposed Official Draft 1962))). Because even an "unreasonable" mistake, *i.e.*, negligence, would negate the mental state required for criminal liability, we found it necessary to conform the language of *N.J.S.A.* 2C:2–4a essentially to the language of *MPC* § 2.04(1), by eliminating our Code's additional requirement that a defendant's mistake be "reasonable." 160 *N.J.* at 105–07, 733 *A.*2d at 1131.[2]

---

[2] Unlike *N.J.S.A.* 2C:2–4a, *MPC* § 2.04(1) imposes no requirement that a defendant's mistake of law or fact be "reasonable."

■ Section 2–4b of our Code, on the other hand, is identical to *MPC* § 2.04(2). However, we appear to be among only a handful of states that adopted MPC § 2.04(2) verbatim.[3] As a consequence, there is a dearth of case law to which we may advert in considering this provision. At bottom, the issue of whether Section 2–4b applies to a non-lesser included offense and, if so, the sub-issue of what offense may a defendant be found guilty, involve matters of statutory interpretation. As in all exercises of statutory interpretation, we start with the language of the legislation.

> If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent. .. However, if the statute is not clear and unambiguous on its face, we consider sources other than the literal words of the statute to guide our interpretive task. [T]he Court considers extrinsic factors, such as the statute's purpose, legislative history, and statutory context to ascertain the Legislature's intent.
>
> [*State v. Thomas*, 166 *N.J.* 560, 567, 767 *A.2d* 459, 462(2001) (citations and internal quotation marks omitted).]

Here it does not seem possible to discern the legislative intent concerning Section 2–4b's application to non-lesser included offenses solely from the language of the statute. The State points to the second sentence of Section 2–4b referring to reduction in the "grade and degree" of the offense for which a defendant asserting the defense may be convicted. The State views that reference as indicative of a legislative intent to have the defense available only for lesser-included offenses that a defendant may have believed mistakenly that he was committing. The State thus posits one possible construction of the statutory language; however, it is not the only construction that is reasonably possible.

The term "lesser-included offense" nowhere appears in the text of *N.J.S.A.* 2C:2–4b. The first sentence of Section 2–4b, which establishes when the incomplete defense is available, refers only to a defendant being guilty of "another offense had the situation been as he supposed." The Code contains other instances in which the Legislature included the modifier "included offense," or a refer-

---

[3] See also *Ark.Code Ann.* § 5–206(d); *Haw. Stat. Ann.* § 202–219.

ence to one offense being included in another, when it meant to do so. See *N.J.S.A.* 2C:1–8a(1), –8d, and –8e; *N.J.S.A.* 2C:1–9a. It would seem that if the Legislature intended to limit *N.J.S.A.* 2C:2–4b to lesser-included offenses, it would have stated that intent expressly, not inferentially.

As raised in this appeal then, there appear to be multiple interpretations of Section 2–4b in respect of defendant's mistake-of-fact defense: (1) that Section 2–4b only encompasses lesser-included offenses, and therefore provides no defense against defendant's CDS charges because receiving stolen property is not a lesser-included offense of those charges; or (2) that Section 2–4b encompasses non-lesser included offenses, and therefore provides a defense by which, if the jury believed his testimony, defendant should have been convicted of either (a) third-degree possession of stolen property, or (b) third-degree possession of CDS. Because the statute is not free of ambiguity, we may turn to extrinsic aids for assistance in discerning the likely legislative intent underlying this Section. See *Thomas, supra*, 166 *N.J.* at 567, 767 *A.*2d at 462–63.

## C.

In tracing Section 2–4b to its source, it appears that the Section's language originated as the "final version" of the ignorance or mistake-of-fact provision adopted for inclusion in the *MPC*. The evolution of that language in the Official Draft of *MPC* § 2.04(2) demonstrates that the drafters specifically considered whether to allow the mistake-of-fact defense to apply to a non-lesser included offense. As originally drafted by the American Law Institute (ALI), *MPC* § 2.04(2) provided, in relevant part:

(2) When ignorance or mistake affords a defense to the offense charged but the defendant would be guilty of another [and included] offense had the situation been as he supposed it was, he may be convicted of that other offense.

[Alternative (1): "he may be convicted of an attempt to commit that other offense."]

[Alternative (2): "he may be convicted of the offense charged but shall be sentenced only as may be authorized if the situation had been as he supposed".]

[*MPC* § 2.04(2) (Tentative Draft No. 4 1955) (alternations in original).]

The accompanying Reporter's Commentary to the Tentative Draft recommended the provision as quoted above, rejecting Alternative (1) and (2). *Id.* § 2.04 cmt. 2 at 137. The Reporter's Commentary also highlighted a flaw in the approach being suggested, a flaw that would implicate a defendant's right to indictment if the mistake-of-fact defense were to be applied to a non-lesser included offense.

There is, however, an important problem of procedure as to how far the suggested principle may be applied. No difficulty is presented when the lesser offense is an included crime, conviction of which is permitted generally on the indictment or information filed. The issue may arise, however, when one offense is not included in the other. The defendant, for example, may be charged with knowingly possessing narcotics. If his defense is that he thought the package found in his possession contained a different kind of contraband, is it procedurally necessary that he be acquitted if his defense is believed? Some members of the Council of the Institute consider that it is, upon the ground that the offense which the defendant thought he was committing is not included in the accusation made. *The Reporter thinks that the procedural requirement should be susceptible of relaxation in this special situation; the defendant needs no notice of the charge when he avows his effort to commit another crime to escape conviction of the crime that has been charged. But if the [ALI] considers the procedural objection valid, the section can be limited to cases where an included offense is involved and still have some substantial value.*

[*Id.* at 137–38 (emphasis added).]

Ultimately, the suggested language was rejected. See Richard Singer, *The Model Penal Code and Three Two (Possibly Only One) Ways Courts Avoid Mens Rea*, 4 Buff. Crim. L. Rev. 139, 191 (2001) (noting ALI overruled proposed provision). The ALI settled on a differently worded version that omitted any language limiting the provision to lesser-included offenses:

Although ignorance or mistake would otherwise afford a defense to the offense charged, the defense is not available if the defendant would be guilty of *another* offense had the situation been as he supposed. In such case, however, *the ignorance or mistake of the defendant shall reduce the grade and degree of the offense of which he may be convicted to those of the offense of which he would be guilty had the situation been as he supposed.*

[*MPC* § 2.04(2) (Proposed Official Draft 1962) (emphasis added). *See also MPC* § 2.04(2) (Official Draft and Revised Comments 1985) (same); *N.J.S.A.* 2C:2–4b (same).]

*MPC* § 2.04(2) is, "in substance, Alternative (2) of the [1955 tentative] draft, which both the Advisory Committee and the Council deemed the preferable treatment of the problem of the actor who submits as a defense to the crime charged a mistake which, had the facts been as he thought, would have involved commission of another crime." *MPC* § 2.04(2) note at 31 on status of section (Proposed Official Draft 1962). Thus, although a complete defense to the crime charged is unavailable, an "incomplete" defense operates to preclude conviction and punishment for the graver offense with which the defendant was charged but for which there is no culpability. As explained in the Reporter's final Official Draft Explanatory Note:

> [*MPC* § 2.04(2)] deals with a special kind of case, one where the actor raises a particular belief as a defense to the offense with which he is charged, but where he would be guilty of *another* offense had the situation been as he supposed. In this event, the defense that would otherwise be available under [*MPC* § 2.04(1)] is denied. *The defendant cannot be convicted of a grade or degree of offense higher than the offense of which he could have been convicted had the situation been as he supposed.*
>
> [*MPC* § 2.04 Explanatory note at 268 (Official Draft and Revised Comments 1985) (emphasis added).]

The final revised Commentary is more expansive in explanation:

> [*MPC* § 2.04(2)] is addressed to a limited problem that may produce distortion in the law, namely where the defendant claims mistake but where a criminal offense still would have occurred had the situation been as the defendant believed it to be. If the defense were denied altogether, an actor culpable in respect to one offense could be convicted of a much more serious offense. On the other hand, the defendant should not go free, for on either view—the facts as they occurred or as the defendant believed them to be—a criminal offense was committed.
>
> The offense of burglary will illustrate the problem. Burglary is defined generally by Section 221.1 to include entry into any building or occupied structure for the purpose of committing a crime therein, and is graded normally as a felony of the third degree. It is a felony of the second degree, however, if the building is a dwelling house. If the defendant believed, and formed his belief in a manner that could not be characterized as reckless, that the building was a store, he could be convicted only of a third degree felony.
>
> To deny the relevance of the defense of mistake in this situation would be in effect to re-characterize, for this special purpose, the culpability level normally required by the Code for the material element of the more serious offense. Presumably a considered judgment led to the inclusion as a material element the requirement that the building be a dwelling in order to aggravate the offense to a second degree felony; measuring the defendant's culpability toward that element should be an

important exercise in grading the extent of the criminality involved. The doctrine that when one intends a lesser crime he may be convicted of a graver offense committed inadvertently leads to anomalous results if it is generally applied in the penal law; and while the principle obtains to some extent in homicide, its generality has rightly been denied.

*Even if the defendant in the circumstances supposed is not to be convicted of the graver crime, it seems clear that he should not be acquitted.* One possibility is that the case could go to the jury as an attempt to commit the lesser offense. Another possibility would be to permit a conviction of the lesser offense, the one which he would have committed had the facts been as he supposed them to be. A third possibility, which is the one embraced in Section 2.04(2), is to deny the defense in these circumstances, but to limit the classification of the offense and the available dispositions of the defendant to those that would have been available upon conviction of the lesser offense.

These three alternative approaches were published as such in Tentative Draft No. 4 at 17 (1955). The Advisory Committee and the Council selected the approach reflected in [MPC § 2.04(2)], largely on the ground that it avoided a procedural objection to the other alternatives, namely, that they might lead to a conviction of a crime that the indictment or the information did not charge. *The important point, whichever of these solutions is adopted, is that the effective measure of defendant's liability should be his culpability, not the actual consequences of his conduct.* This is the result obtained here, through the denial of a defense that otherwise would be available.

[*Id.* § 2.04 cmt. 2 at 272–74 (emphasis added) (footnotes omitted).]

The commentary does not end there. The 1971 explanation of proposed Section 2–4b by the New Jersey Criminal Law Revision Commission (Commission) places on the *MPC* language (recommended for verbatim inclusion in our Code) a gloss that is somewhat confusing due to a few obvious internal errors. Nonetheless, it too discusses the Commission's patent intent to have the defense apply to non-lesser included offenses and focuses on the determination of the crime for which a defendant may be found guilty when his mistake involves such criminal conduct. The Commission stated:

The second change [to pre-Code New Jersey law] is found in § 2C:2–4c. [Gann Ed. Note: This probably was intended to read 2C:2–4b.] Mistake dogma is frequently stated as requiring that the mistake must be of such a nature as to make the conduct non-criminal. If it is not, the mistake does not excuse at all. When defendant would be guilty of some offense under his view of the facts, it is possible to [1] find him guilty of the graver offense, [2] *find him guilty of the lesser offense, i.e., the offense of which he would have been guilty were the facts as he believed them,* [3] *find him guilty of the greater offense but limit sentence to the lesser,* or [4] find him guilty of an attempt to commit the lesser offense. The Code

alleviates the existing rule by stating that the *defendant cannot be found guilty of the greater offense which is negated by the mistake but can be convicted of the offense which would have been committed if the facts had been as he mistakenly believed them to be, i.e., the third [Gann Ed. Note: This probably was intended to read second] alternative, above.* MPC T.D. 4, pp. 17–137 (1955).

[Cannel, *supra*, comment 4 on *N.J.S.A.* 2C:2–4b (reprinting II *The New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission* cmt. 3 on 2C:2–4 at 53 (1971)(emphasis added)).]

## III.

### A.

It is evident from the commentary on *MPC* § 2.04(2) that a defendant who believed that it was *another* offense that he was committing, was not to be allowed a complete defense to liability as permitted under *MPC* § 2.04(1). It is also clear that efforts to limit the incomplete mistake-of-fact defense permitted under *MPC* § 2.04(2) to included offenses was considered, and rejected, in the final language contained in the *MPC* Official Draft. The Official Draft pointedly demonstrates rejection of the proposed version of *MPC* § 2.04(2), which had highlighted the perceived difficulty of allowing the incomplete defense in the context of a defendant's mistaken belief he was committing a non-lesser included offense. A version that eschewed such a limitation was adopted by the ALI and later incorporated into our Code without change. We see no reason to infer that by the *MPC* § 2.04(2) reference to reducing "the grade and degree of the offense of which [the defendant] may be convicted," the *MPC* drafters intended to limit the incomplete mistake-of-fact defense of *MPC* § 2.04(2) to lesser-included offenses only.

Even more compelling is the Commentary by the Commission concerning Section 2–4b of our Code, despite the obvious errors in transcription. The Commentary discusses the options that were considered for inclusion in the provision and notes specifically the Commission's choice of that option which would permit the defense to apply even when it is a non-lesser included offense that a defendant supposed he was committing. Applying the consistent

thread that runs throughout the discussions of those involved in the drafting of the *MPC* and our Code, we can find an intent to allow the imperfect mistake-of-fact defense to a defendant who commits one crime while believing himself to be committing another, non-lesser included, offense.

█ Moreover, were we to conclude otherwise and hold that a defendant in such a circumstance could argue only that his mistaken belief, if accepted by the jury, negated the required mental state for the graver offense charged (the "all-or-nothing" position taken by the State, the trial court and the Appellate Division here), we would put the defendant in no different a position than he is under Section 2–4a. Section 2–4b would be reduced to surplusage in such circumstances. Enabling a defendant to avoid conviction entirely was not the desired intent of the drafters of Section 2–4b and its predecessor in the *MPC*. Just the converse appears to have been intended: namely, that the defendant be held liable for his lesser culpability, while not allowing conviction for the greater wrong of which he was not aware. As stated by the *MPC* Commentary, the "effective measure of defendant's liability should be his culpability, not the actual consequences of his conduct." *MPC* § 2.04 cmt. 2 at 273–74. The drafters did not intend that a defendant who believed he was committing a non-lesser included offense would be able to evade criminal liability entirely.

B.

The sum of the *MPC* and Code commentary is a mix, however, in respect of identifying the crime for which a defendant, asserting a mistake-of-fact defense under Section 2–4b may be found guilty. In addition, there are criminal law scholars who contend, essentially, that the culpability determination is critical in the analysis of how to punish a defendant under Section 2–4b. Proponents of that approach argue for the defendant's actual culpability to be given controlling effect as between that which a defendant may have mistakenly done and that which he thought he did. See

LaFave & Scott, *supra*, § 5.6(c) at 405. Stated differently, although a defendant should not be held liable for a graver crime if he did not have the requisite *mens rea*, he may be convicted for another, non-lesser included crime that he believed he was committing.

That is Cannel's interpretation of our Code's language. He explains that "[b]asically, what [Section 2–4b] says is that if a person reasonably believes he is shooting a deer, and he is shooting a person, he can not be convicted of murder, but only of hunting out of season." Cannel, *supra*, comment 4 on *N.J.S.A.* 2C:2–4. Cannel's view is shared by LaFave, who construes the source language of *MPC* § 2.04(2) to mean that a defendant may be convicted " 'of the offense of which he would be guilty had the situation been as he supposed,' " notwithstanding that the supposed offense is not a lesser-included offense of that actually committed. LaFave & Scott, *supra*, § 5.1(b) at 584 & n. 53 (quoting *MPC* § 2.04(2) (Official Draft and Revised Comments 1985)).

To be sure, the scholarly commentators are not of one mind on this subject. Although it is generally agreed that a defendant ought not be acquitted if he claims that it was another lesser crime that he supposed he was committing, the competing rationales for supporting a conviction on *some* lesser crime are debatable. Certain commentators would construe the *MPC* and Section 2–4b to permit a defendant to be charged with, and convicted of, "the [graver] offense for which the actus reus is satisfied," but limit the punishment for that offense, if it would be more severe, to that of the "offense that he thought he was committing." 1 Paul H. Robinson *et al.*, *Criminal Law Defenses* § 62(c)(5) & n. 37 (1984 & Supp. 2002–2003)(Robinson). *See also* Singer, *supra*, 4 *Buff. Crim. L. Rev.* at 191. According to Professor Robinson, both the *MPC* and Section 2–4b contemplate application of the doctrine of "substituted mental elements," which would allow the requisite *mens rea* for the crime actually committed to be imputed from a defendant's admitted culpable mental state for the crime he

supposed he was committing. Robinson, *supra*, §§ 62(c)(5), 89(e). Robinson adds that although the language of the *MPC* (and Section 2–4b) would seem "to permit the actor's culpable mental state for any other offense to provide the basis for imputation, the better approach is to adopt an equivalency theory that would require that the other offense be one of similar blameworthiness," such as mistaken arson or burglary of a dwelling rather than a store. See *id.* § 62(c)(5) & n. 34.

In sum, and as all the above scholars seem to agree, the language of Section 2–4b and its source provision in the *MPC* reasonably support an approach permitting a defendant to present his incomplete mistake-of-fact defense under *N.J.S.A.* 2C:2–4b when he claims he was committing another non-lesser included offense and not the different and graver crime for which he was indicted. That mistake-of-fact defense, if believed by the jury, would prevent his conviction and punishment for the graver crime. It does not entitle him to a complete acquittal, however, not even if the other offense he supposed he was committing was not charged in the indictment and not even if it was not a lesser-included offense to the offense charged in the indictment.

As among the competing views on what offense a defendant may be convicted and for which he may be punished, we find that it is analytically more consistent with Code precepts to allow conviction and punishment of a defendant for the crime of which he was culpable, that is the crime that he actually would have committed had the facts proven to be as he believed. We choose that approach over an approach that would convict defendant of a crime for which he did not have intent on the basis of substituted intent, and then reduce the conviction in grade to match the degree of culpability of the offense he believed he was committing.[4] If the jury believes the defendant's "explanation" that he

---

[4] The Code emphasizes fault and culpability. See *N.J.S.A.* 2C:1–2(5) and 2–2. The primacy given to culpability considerations is discernable also from the Code's treatment of the related area of attempt offenses. Attempt offenses

thought he was acting in furtherance of the commission of a non-lesser included offense, it may convict the defendant of that crime on the basis of that testimony. Thus, we hold that a jury must be instructed that under *N.J.S.A.* 2C:2–4b that it may convict a defendant of the crime to which he has admitted if it believes his testimony. In this instance, defendant was entitled to a jury charge that would allow him to be convicted of receiving stolen property, in violation of *N.J.S.A.* 2C:20–7a (a crime of the third degree), in addition to the charges on which he was indicted, Count I, third-degree possession of CDS, in violation of *N.J.S.A.* 2C:35–10a(1); and Count II, first-degree possession of CDS with intent to distribute, in violation of *N.J.S.A.* 2C:35–5b(1).

To be sure, the substituted *mens rea* approach has analytic attraction, drawing as it does from the language in *N.J.S.A.* 2C:2–4b that refers to punishment of a defendant for the crime charged, reduced to the "grade and degree" of the crime he supposed he was committing. Under the alternative approach espoused by, among others, Professor Singer, defendant could have the grade and degree of offenses for which he was indicted—first-degree possession of CDS with intent to distribute and third-degree possession of CDS—reduced to the grade and degree of the offense that he believed he committed—third-degree receiving stolen property. In this matter either approach results in conviction of an offense of the same grade and degree, a third-degree crime. However, a third-degree drug offense carries different, and more severe penalties than third-degree receiving stolen property, including the potential of an extended term sentence under *N.J.S.A.* 2C:43–6f, and a fine of up to $75,000 for third-degree possession of CDS with intent to distribute pursuant to

---

primarily focus on culpability and allow conviction even if the *actus reus* of the attempted offense is incomplete. See *N.J.S.A.* 2C:5–1. *See also McCoy, supra,* 116 *N.J.* at 304, 561 *A.*2d at 588 (recognizing that person may be convicted of attempt to receive stolen property). We note that defendant is not making an attempt argument here, however. He testified that he actually received and packed the stolen coats, knowing at the time that he was engaged in the act of transporting stolen property.

*N.J.S.A.* 2C:35–5b(5), versus a fine of $15,000 for third-degree receiving stolen property pursuant to *N.J.S.A.* 2C:43–3b(1). Thus, Professor Singer's approach would place the sentencing judge in the awkward position of meting out a sentence for a drug offense when defendant only had the mens rea for a theft offense. As stated, our approach here is guided by the Code's direction that the criminal laws be applied in a manner that punishes an individual for his culpability. If the jury accepts defendant's testimony and finds that he did not believe he was carrying drugs, his punishment should be that which the legislature has chosen to apply to the specific crime the defendant believed he was committing. Our holding serves that sensible purpose.

Finally, to the extent that the MPC drafters perceived "procedural difficulties" associated with our approach, see *MPC* § 2.04 cmt. 2 at 273 (expressing concern for notice through indictment where that right is guaranteed), we find that those difficulties to be more apparent than real. Deviation from the requirement of fair notice through indictment may be justified when a defendant raises his intention to commit the non-lesser included offense as his defense to the offenses charged. See LaFave & Scott, *supra,* § 5.01(c) at 584 n. 53. Indeed, although submission to a jury of an unindicted, non-lesser included offense implicates the guarantee that "[n]o person shall be held to answer for a criminal offense unless on the presentment or indictment of a grand jury," *N.J. Const.* art. I, ¶ 8, we have recognized that a defendant may waive the right to indictment and agree to proceed on a non-lesser included charge. *State v. Ciuffreda,* 127 *N.J.* 73, 76, 602 *A.*2d 267, 269 (1992). See *R.* 3:7–2 (allowing defendant in non-capital case to waive, in writing, right to indictment).

In *Ciuffreda,* we permitted an exception to the waiver requirements of *Rule* 3:7–2 due to the timing and source of the request. The defendant consented to a passion/provocation charge after all the evidence had been presented by the parties and, in that context, the defendant's oral consent was deemed a sufficient waiver. Here, as in *Ciuffreda,* defendant contemplated before

trial that the unindicted charge of receiving stolen property might have been submitted to the jury as a non-lesser included offense. His entire defense was built on the hope that the jury would believe his testimony about the fur coats and the trial proceeded on that basis. Defendant clearly was satisfied with the evidence submitted to the jury on the proposed possession of stolen property offense because he himself requested that the unindicted charge be submitted for the jury's consideration. His due process rights to notice and opportunity to defend were not violated in those circumstances.

However, whereas in *Ciuffreda* the State had requested that the unindicted charge be submitted and Ciuffreda consented, here, the State objected to the charge defendant requested. The State contends that defendant has turned *Ciuffreda* effectively on its head by attempting to use his fundamental right to indictment to advantage against the State's prerogative to choose which unrelated charges it will, or will not, charge and prosecute. See *State v. Smith*, 136 *N.J.* 245, 253, 642 *A.2d* 978, 981–82 (1994) ("A defendant should not be allowed to alter the State's trial strategy by admitting the commission of an unrelated, less serious offense, and then having the court charge the jury, over the State's objection, that it can return a verdict on that offense"); *see also State v. Freeman*, 324 *N.J.Super.* 463, 469, 735 *A.2d* 1195, 1199 (App.Div. 1999) (noting prosecutor's charging discretion and consent are relevant to whether unindicted charge may be submitted to jury when defendant's proposed lesser-offense charge is neither an included offense nor one "embraced" by indictment).

The State's approach, if accepted, would preclude defendant from access to the incomplete mistake-of-fact defense that the Legislature has permitted by the inclusion of *N.J.S.A.* 2C:2–4b in our Code. Such a result would be inconsistent with the statutory language, and its history, as we understand it. Moreover, the State's view results in rendering Section 2–4b essentially superfluous, for its interpretation would limit Section 2–4b by the constraints applicable to a trial court's existing lesser-included offense

charging responsibilities under *N.J.S.A.* 2C:1–8. That would confound Section 2–4b's independent significance.

Finally, as we did in *Sexton*, we remind the trial court that it must explain in its instruction to the jury the contours of the incomplete mistake-of-fact defense in light of the facts of this case. See *Sexton, supra,* 160 *N.J.* at 106, 733 *A.2d* at 1132. The trial court may consider a charge along the following lines on the facts here presented:

> In this case, the defendant contends that he believed that he possessed stolen fur coats, which if true, would constitute the offense of receiving stolen property, a crime of the third degree. If you find that the State has not proven beyond a reasonable doubt that the defendant knew that he possessed cocaine, rather than fur coats, defendant should be acquitted of [CDS offenses] and convicted of receiving stolen property. If, on the other hand, you find that the State has proven beyond a reasonable doubt that the defendant knew he possessed CDS, and not fur coats as the defendant contends, then you should convict defendant of [CDS offenses] and not convict defendant of receiving stolen property.

We shall refer the question of a more general charge on the subject to the Committee on Model Criminal Charges for review.

In sum, we conclude that the defendant has waived his right to indictment secured to him under Article I, paragraph 8 of the New Jersey Constitution by asserting, as his mistake-of-fact defense to possession of CDS, that he believed he was engaged in the criminal offense of receipt of stolen property. The jury should have been instructed on that defense and should have been told that if it believed defendant's testimony it could find him guilty of the third-degree crime of receipt of stolen property.

## IV.

We acknowledge that our dissenting colleagues would end this matter now because of their view that a proper instruction would not have altered the jury's verdict. We, however, are not as willing to make that prediction consistent with a traditional harmless-error analysis. Put another way, this case is not so unusual to require departure from the well-established rule that presumes that a trial court's instructional error on a material issue constitutes reversible error. See *State v. Warren,* 104 *N.J.* 571, 579, 518

*A.*2d 218, 222–23 (1986) (outlining relevant standards in this area of law). Under those circumstances, a new trial before a properly charged jury is the appropriate remedy.

The judgment of the Appellate Division is reversed and the matter remanded for further proceedings consistent with this opinion.

Justice VERNIERO, concurring and dissenting.

I concur with the Court's statutory analysis but respectfully dissent from its ultimate disposition. I would find that the trial court's failure to charge a mistake-of-fact defense was harmless error.

I fully appreciate that "erroneous [jury] instructions on material issues are presumed to be reversible error, excusable only if they are harmless beyond a reasonable doubt." *State v. Warren,* 104 *N.J.* 571, 579, 518 *A.*2d 218, 222 (1986) (internal citation and quotation marks omitted). Harmless error in these circumstances ordinarily is not found. However, this is the unusual case in which the record lends itself compellingly to a harmless-error analysis.

The State presented overwhelming evidence of defendant's guilt. Included in those proofs were the undisputed expert testimony that Houston (the city to which defendant traveled to secure the contraband) is a source city for cocaine; that drug traffickers often purchase one-way tickets (like the ticket purchased for defendant) to source cities; that they purchase those tickets with cash (as happened here); and evidence that defendant himself was familiar with the drug trade because of a prior drug conviction (which the jury learned by his own testimony).

Importantly, the State's proofs also included the physical evidence such as the suitcase containing the cocaine that defendant was carrying when arrested. Defendant testified to his belief that the suitcase contained not cocaine, but rather six fur coats that he described as "medium size, ... long sleeve, very furry and inside,

very comfortable." (We inspected the suitcase, which is part of the record. It is an average-size container, approximately eight inches wide, seventeen inches high, and twenty-four inches long, suitable for one person to carry.)

In her closing argument the assistant prosecutor pointedly referred to the physical and testimonial evidence, asking jurors,

how many fur coats ... do you think you can get into [that] suitcase? Six? Wrong. No. I want you, when the suitcase goes [into the jury deliberation room] with the drugs, I want you to feel how heavy it is with and without the drugs. And I want you to ask yourself those questions that I had asked of you. Because when you do that, you're going to know, you're going to find out for yourselves that the reason that defendant went to Houston was to pick up the drugs, the merchandise as he puts it.

The conclusion is unmistakable that, in returning its guilty verdict, the jury simply could not accept that defendant was laboring under the mistaken belief that he was carrying six "long sleeve, very furry" fur coats in that single suitcase. The jury's determination should come as no surprise. As demonstrated by the assistant prosecutor, it is virtually impossible for a person to fit and carry six such fur coats in the suitcase used by defendant. Affording an accused a fair trial does not mean that we must expect jurors to accept an utterly implausible or untenable defense.

Although the trial court did not instruct the jury on mistake-of-fact, neither did it contradict that theory in its overall charge. Moreover, jurors fully were aware of the defendant's position. Indeed, defendant's entire defense was predicated on that proposition, which the jury presumably understood based on defendant's testimony and his counsel's statements to jurors. (Defense counsel repeatedly referred jurors to defendant's mistake-of-fact defense.) "We must ... consider the charge [that was given here] in light of the arguments made by trial counsel, as those arguments can mitigate prejudice resulting from a less-than-perfect charge." *State v. Robinson,* 165 *N.J.* 32, 47, 754 *A.*2d 1153, 1161 (2000).

In sum, I am satisfied beyond a reasonable doubt that the brief charge that the majority now requires would not have altered the jury's verdict. Defendant presented his mistake-of-fact defense, albeit without his requested instruction. Yet, "[c]onsidering the instructions in their entirety, in the context of the evidence and the arguments of trial counsel, [I am] convinced that the charge [that was given in this case] was fair." *Ibid.* Measured against the overwhelming proofs presented by the State, there was nothing about defendant's trial that was capable of producing an unjust result. The jury's verdict, therefore, should not be disturbed.

Chief Justice PORITZ joins this opinion.

*For reversing and remanding*—Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, and WALLACE—5.

*Concurring in part/dissenting in part*—Chief Justice PORITZ, and Justice VERNIERO—2.