997 A.2d 1088 (2010)
414 N.J. Super. 186
Christopher FIGUEROA, Appellant,
v.
NEW JERSEY DEPARTMENT OF CORRECTIONS, Respondent.
DOCKET NO. A-3914-08T2.
Superior Court of New Jersey, Appellate Division.
Submitted March 2, 2010.
Decided June 28, 2010.
*1089 Christopher Figueroa, appellant pro se.
Paula T. Dow, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).
Before Judges FUENTES, GILROY and SIMONELLI.
The opinion of the court was delivered by
GILROY, J.A.D.
Appellant Christopher Figueroa appeals from the February 17, 2009 final decision of the New Jersey Department of Corrections (DOC) that found him guilty of committing prohibited act *.803/*.203 (attempting to commit possession or introduction of any prohibited substances such as drugs, intoxicants or related paraphernalia not prescribed for the inmate by the medical or dental staff), in violation of N.J.A.C. 10A:4-4.1(a). The issue on appeal is whether the DOC presented sufficient evidence to meet its burden of persuasion to sustain its charge that appellant committed the prohibited act. Because the DOC failed to prove appellant knew the item he was attempting to possess contained a prohibited substance under the regulation, we reverse.
On February 3, 2009, while an inmate at the East Jersey State Prison, appellant asked Senior Corrections Officer W. Washington if appellant could obtain a pack of Bugler[1] tobacco from inmate Cristian Veguilla who was incarcerated in a different cell than appellant. Washington advised appellant that he would obtain the tobacco for him. On obtaining the tobacco from Veguilla, Washington inspected the pack and found a rolled-up cigarette containing a green, leafy substance, which later tested positive for marijuana. On finding the marijuana, another corrections officer requested appellant submit to a urine test. Appellant advised the officer that he would provide the specimen, but wanted to first talk to a superior corrections officer.
On February 4, 2009, the DOC charged inmate Veguilla with prohibited act *.203 (possession or introduction of any prohibited substances . . . not prescribed for the inmate by the medical or dental staff); and charged defendant with prohibited acts *.803/*.203 and *.258 (refusing to submit to testing for prohibited substances).
At the disciplinary hearing, appellant pled not guilty and received assistance of counsel substitute, N.J.A.C. 10A:4-9.12(a). Appellant acknowledged that he had requested tobacco from Veguilla, and that Veguilla had told him to stop by after dinner and he would give it to him. Appellant denied knowing that the pack of tobacco given to Washington on his behalf contained marijuana. In a two-page written statement, Veguilla confirmed appellant's version of events. In so doing, *1090 Veguilla admitted to possessing the marijuana and asserted that he had "mistakenly grabbed the buglers that [he] had stashed [his] marijuana in" when asked for the tobacco by Washington.
The hearing officer found appellant not guilty of prohibited act *.258 but guilty of prohibited act *.803/*.203. In finding appellant guilty, the hearing officer provided the following statement of reasons:
Figueroa is charged with attempting to obtain marijuana and denies guilt. While the other inmate takes responsibility, Figueroa did attempt to get the bugl[e]rs from Veguilla. This is a common occurrence, and he could reasonably expect to be able to accomplish this without a search that would reveal the drugs. In addition, drugs are difficult to get into the institution, and it is not reasonable to expect Veguilla would accidentally give away drugs. Figueroa also resisted providing a urine specimen following this incident. There is substantial evidence of guilt, as Figueroa requested a package which did have drugs in it.
The hearing officer sanctioned appellant to fifteen days of detention, with credit for time served; ninety days of administrative segregation, suspended for sixty days; 180 days loss of commutation time; permanent loss of contact visits; and 365 days of urine monitoring. On February 11, 2009, appellant administratively appealed the decision. On February 17, 2009, Assistant Superintendent Robert LaForgia affirmed. N.J.A.C. 10A:4-11.5(a)5. On appeal, appellant argues that the hearing officer's finding of guilt was not supported by substantial evidence. We agree.
Our role in reviewing the decision of an administrative agency is limited. Circus Liquors, Inc. v. Middletown Twp., 199 N.J. 1, 9, 970 A.2d 347 (2009); In re Taylor, 158 N.J. 644, 656, 731 A.2d 35 (1999). We will not disturb the determination of an administrative agency absent a showing that it was arbitrary, capricious, or unreasonable; that is, 1) "the agency's action violates expressed or implied legislative policies"; 2) "the record [does not] contain[] substantial evidence to support the findings on which the agency based its action"; and 3) "in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors." Circus Liquors, supra, 199 N.J. at 10, 970 A.2d 347 (quoting Mazza v. Bd. of Trs., Police & Firemen's Retirement Sys., 143 N.J. 22, 25, 667 A.2d 1052 (1995)); see also In re Musick, 143 N.J. 206, 216, 670 A.2d 11 (1996); Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980).
Decisions of administrative agencies carry with them a presumption of reasonableness. Newark v. Natural Resource Council, 82 N.J. 530, 539, 414 A.2d 1304, cert. denied, 449 U.S. 983, 101 S.Ct. 400, 66 L.Ed.2d 245 (1980). An appellate court may not reverse an agency's determination "even if [the] court may have reached a different result had it been the initial decision maker." Circus Liquors, supra, 199 N.J. at 10, 970 A.2d 347. Stated otherwise, a court "may not simply `substitute its own judgment for the agency's.'" Ibid. (quoting In re Carter, 191 N.J. 474, 483, 924 A.2d 525 (2007)).
Nonetheless, "although the determination of an administrative agency is entitled to deference, our appellate obligation requires more than a perfunctory review." Blackwell v. Dep't. of Corr., 348 N.J.Super. 117, 123, 791 A.2d 310 (App. Div.2002). Accordingly, our function is not to merely rubberstamp an agency's decision, Williams v. Dept. of Corr., 330 N.J.Super. 197, 204, 749 A.2d 375 (App. Div.2000); rather, our function is "to engage in `a careful and principled consideration *1091 of the agency record and findings.'" Ibid. (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93, 312 A.2d 497 (1973)).
The DOC has a legitimate interest in enforcing its zero tolerance policy, N.J.A.C. 10A:1-2.2, against introduction, possession or use of illegal drugs in its correctional facilities. N.J.A.C. 10A:4-5.1(c). However, enforcement of that policy through disciplinary actions against inmates must be based on more than a subjective hunch, conjecture or surmise of the factfinder. Indeed, a disciplinary hearing officer's adjudication that an inmate committed a prohibited act must be based on substantial evidence in the record. N.J.A.C. 10A:4-9.15(a); Circus Liquors, supra, 199 N.J. at 9-10, 970 A.2d 347; Jacobs v. Stephens, 139 N.J. 212, 222, 652 A.2d 712 (1995). "Substantial evidence" means "such evidence as a reasonable mind might accept as adequate to support a conclusion." In re Public Serv. Electric & Gas Co., 35 N.J. 358, 376, 173 A.2d 233 (1961) (quoting In re Hackensack Water Company, 41 N.J.Super. 408, 418, 125 A.2d 281 (App.Div.1956)). The term has also been defined as "evidence furnishing a reasonable basis for the agency's action." McGowan v. N.J. State Parole Bd., 347 N.J.Super. 544, 562, 790 A.2d 974 (2002). It is against these principles that we consider appellant's argument.
The hearing officer concluded that there was substantial evidence of appellant's guilt because appellant had requested a package of tobacco from Veguilla which contained drugs. In support of his decision, the officer determined that appellant could reasonably have expected to receive the pack of tobacco from Veguilla without a search because it was common practice for inmates to give or receive tobacco products from one another; it was unreasonable to conclude that Veguilla accidentally gave away his marijuana because of the difficulty in smuggling drugs into the correctional facility; and appellant had resisted providing a urine specimen following the incident.
Appellant was found guilty of attempting to possess marijuana. Although the term "possession" is not contained in the definitional sections of the administrative code governing inmate discipline, N.J.A.C. 10A:1-2.2 and N.J.A.C. 10A:4-1.3, we are satisfied that in the context of prohibited act *.203, we should construe the term as the Court defined it for the purpose of imposing criminal liability under statutes charging individuals with possession of controlled dangerous substances, that is, "[p]ossession . . . signifies a knowing, intentional control of a designated thing, accompanied by a knowledge of its character." State v. Pena, 178 N.J. 297, 305, 839 A.2d 870 (2004) (quotations omitted). Thus, an inmate cannot be found guilty of possession of a prohibited drug "unless [there is sufficient proof] that he knew or was aware, at a minimum, that he possessed [the drug]." Ibid.
The hearing officer's findings do not reasonably support the conclusion that appellant was aware that the tobacco pack Veguilla handed Washington on appellant's behalf contained marijuana. We address the hearing officer's findings in reverse order. That appellant had resisted providing a urine specimen lends no support to a determination appellant had knowledge the tobacco pack contained marijuana, as the hearing officer adjudicated appellant not guilty of the *.258 charge of refusing to submit to testing for prohibited substances. The finding that Veguilla accidentally gave away his marijuana because it was difficult to smuggle drugs into the prison also lends little or no support to the hearing officer's ultimate conclusion. The officer's finding by its own terms explains Veguilla's actions, that is, Veguilla "accidentally" *1092 gave the marijuana to Washington, not intentionally. Such a finding is supported by Veguilla's statement that he had "mistakenly grabbed the Buglers that [he] had stashed [his] marijuana in" when asked for the tobacco by Washington.
Lastly, the hearing officer's finding that appellant could have reasonably expected to have received the tobacco pack from Veguilla without a search is insufficient by itself to permit a reasonable factfinder to arrive at the conclusion that appellant had knowledge that the tobacco pack contained marijuana. Although a hearing officer is entitled to draw upon his or her experience as a corrections officer in rendering his or her findings, the mere fact that the DOC does not search all items exchanged among inmates does not mean that all items exchanged contain contraband.
Reversed.
NOTES
[1] The parties refer to name of the tobacco as "Buglar" and the record interchangeably refers to the pack of tobacco as "Bugler" or "Buglar." Although neither the parties' briefs nor the record contains a definition for either "Bugler" or "Buglar," we were able to ascertain that "Bugler" is a brand name of loose tobacco, rolling papers and associated paraphernalia. Accordingly, we will refer to the name of the tobacco as "Bugler" in this opinion. See http://buglertobacco.org/.