**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2119-19

DASHAD WALDEN,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted March 17, 2021 – Decided April 15, 2021

Before Judges Accurso and Vernoia.

On appeal from the New Jersey Department of Corrections.

Dashad Walden, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Raajen V. Bhaskar, Deputy Attorney General, on the brief).

PER CURIAM

     Dashad Walden, an inmate at New Jersey State Prison, appeals from an

October 9, 2019 New Jersey Department of Corrections (DOC) final agency decision finding him guilty of prohibited act *.202, "possession . . . of a weapon, such as, but not limited to, a sharpened instrument, knife, or unauthorized tool." N.J.A.C. 10A:4-4.1(a)(1)(x).  We affirm.

During a 7:00 p.m. non-routine search of cells at the prison, a DOC officer observed a bottle of baby powder on the shelf in Walden's cell.  The officer removed the bottle's lid and found a five-and-one-half inch "shank" made of "sharpened copper wire that is as sharp as a needle at one end and white string" wrapped around the other end "as a handle."  The officers reported the item was made of four "braided copper cable wires that are sharpened at one end."

Officers seized the bottle and shank and removed Walden from his cell. The next day, DOC staff served Walden with a disciplinary report charging him with prohibited act *.202.  He pleaded not guilty to the charge and, pursuant to his request, was granted the assistance of a counsel substitute.

At the subsequent hearing, Walden stated that between 10:30 and 11:00 a.m. on the day of the search, a DOC officer gave him a bag from another inmate containing Walden's "commissary stuff."  Walden stated he "had no idea what was in there" and did not open the bag "until later that day."  Walden claimed he did not know the shank was in the baby powder bottle he had been given.

2

The hearing officer granted Walden's request that a statement be obtained from another inmate. The inmate, however, stated only that he "[knew] nothing about that."

The hearing officer found the shank was in a bottle of baby powder on the shelf in Walden's cell. The hearing officer "discredit[ed]" Walden's claim he did not know the shank was in the bottle, and noted Walden's witness "did not assist him." The hearing officer reasoned that even if, as Walden claimed, the bottle was delivered between 10:30 and 11:00 a.m., there "was more than enough time for [him] to have inspected what he was given" before the 7:00 p.m. search. The hearing officer also noted Walden "did not wish to request any evidence," including video recordings, "to support his claims."

The hearing officer concluded the officers' reports and the photographs of the shank and bottle established the shank was sharpened at one end and had a "handle to protect [the] user." The hearing officer found the shank "could cause serious injury." The hearing officer also determined that regardless of how Walden allegedly received the bottle, he was in a "single cell [and] therefore responsible for all items in his cell." The hearing officer found Walden guilty of prohibited act *.202 and imposed the following sanctions: confiscation of the bottle and shank; 365 days loss of commutation time; 300 days of administrative

segregation; 30 days loss of email privileges; and 30 days loss of reactions privileges.

Walden appealed from the hearing officer's decision. In a brief submitted by his counsel substitute, Walden argued the evidence was insufficient to establish he knew the shank was in the bottle. In its final decision, the DOC upheld the hearing officer's decision, finding the hearing was conducted in accordance with applicable procedural requirements and safeguards, and the "preponderance of the evidence presented support[ed] the guilty decision of the hearing officer." This appeal followed.

Walden offers the following argument for our consideration:

> POINT I
>
> N.J.A.C. 10A:4-9.15(a) requires that "[a] finding of guilt at a disciplinary hearing shall be based on substantial evidence that the inmate committed a prohibited act."

"Our role in reviewing the decision of an administrative agency is limited." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). "We defer to an agency decision and do not reverse unless it is arbitrary, capricious[,] or unreasonable[,] or not supported by substantial credible evidence in the record." Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010). An agency's findings will be upheld if sufficient credible

evidence in the record exists to support the agency's conclusions. In re Taylor, 158 N.J. 644, 657 (1999). We "may not substitute [our] own factfinding for that of the agency," and we will overturn an agency decision only when it is "so wide [of] the mark as to be manifestly mistaken." Tlumac v. High Bridge Stone, 187 N.J. 567, 573 (2006).

We do not, however, "merely rubberstamp an agency's decision." Figueroa, 414 N.J. Super. at 191. We review DOC determinations imposing prisoner discipline "in a 'careful and principled consideration of the agency record and findings.'" Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (quoting Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affs., 64 N.J. 85, 93 (1973)).

A DOC determination "that an inmate committed a prohibited act must be based on substantial evidence in the record." Figueroa, 414 N.J. Super. at 191; see also N.J.A.C. 10A:4-9.15(a). "'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion,'" Figueroa, 414 N.J. Super. at 192 (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)), and "evidence furnishing a reasonable basis for the agency's action," ibid. (quoting McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 562 (App. Div. 2002)). We therefore review a disciplinary decision

to determine whether there is substantial evidence in the record to support a finding an inmate committed a prohibited act.

Walden's challenge to the DOC's findings and determination is limited to his claim the DOC failed to present substantial evidence he knew the bottle contained the shank. He does not dispute he possessed the bottle; he contends only that there is no evidence establishing he knew the shank was inside it.

In Figueroa, we noted "the term 'possession' is not contained in the definitional sections of the administrative code governing inmate discipline, N.J.A.C. 10A:1-2.2 and N.J.A.C. 10A:4-1.3." Ibid. We determined it appropriate to apply the definition of possession used in the interpretation of offenses in our Criminal Code, and explained "[p]ossession . . . signifies a knowing, intentional control of a designated thing, accompanied by a knowledge of its character." Ibid. (alterations in original) (quoting State v. Pena, 178 N.J. 297, 305 (2004)). We found "an inmate cannot be found guilty of possession of a prohibited [item] 'unless [there is sufficient proof] that he [or she] knew or was aware, at a minimum, that he [or she] possessed'" the item. Ibid. (second alteration in original) (quoting Pena, 178 N.J. at 305).

"A person has actual possession of 'an object when he [or she] has physical or manual control of it.'" State v. Morrison, 188 N.J. 2, 14 (2006) (quoting State

v. Spivey, 179 N.J. 229, 236 (2004)). A person is in "constructive possession of 'an object when, although he [or she] lacks "physical or manual control," the circumstances permit a reasonable inference that he [or she] has knowledge of its presence, and intends and has the capacity to exercise physical control or dominion over it during a span of time.'" Ibid. (quoting Spivey, 179 N.J. at 237).

Based on our review of the record, we are convinced there is substantial evidence supporting the DOC's determination Walden knowingly possessed the shank. In the first instance, there is substantial evidence establishing he possessed the bottle in which the shank was found. Indeed, the bottle was found on a shelf in his cell, and Walden does not share the cell with other inmates. In addition, by Walden's own admission, the bottle was found in a bag containing another item, cereal, that was his, and he does not dispute the bottle was also his. Those circumstances establish Walden possessed the bottle containing the shank. Cf. State v. Milton, 255 N.J. Super. 514, 523 (App. Div. 1992) (finding the defendant did not possess a controlled dangerous substance found in a room in part because there was no evidence "he occupied the room exclusively" and no other evidence from which it could be inferred the defendant had knowledge of, and control over, the substance).

7

Walden's claim the record lacks evidence he knew the shank was in the bottle ignores that he possessed the bottle in his cell, and the bottle contained the shank. Inmates are unlikely to keep weapons and other contraband in plain view, and it can be reasonably expected that inmates will hide such items in places unlikely to be discovered by corrections officers. Walden possessed the bottle—he exercised dominion and control over it in his single cell—and the DOC could therefore reasonably infer he had knowledge of the bottle's contents, including the shank. As the hearing officer found, an inmate is responsible for the contents of his or her cell. We therefore find the circumstances surrounding Walden's possession of the bottle containing the shank support the DOC's reasoned conclusion he knowingly possessed the shank.

Walden's reliance on Figueroa is misplaced. In Figueroa, the DOC found the inmate guilty of attempting to commit prohibited act *.803/*.203 by attempting to possess a prohibited substance, marijuana, after a bag of tobacco the inmate attempted to obtain from another inmate was found to contain a marijuana cigarette. 414 N.J. Super. at 189-90. We reversed the DOC's determination because there was no evidence the inmate was aware the bag contained the marijuana cigarette. Id. at 193.

A-2119-19

Our decision in Figueroa is inapposite here. Unlike the inmate in Figueroa, who was never in possession of the bag containing the contraband, Walden was in actual possession of the bottle containing the hidden shank. As we have explained, Walden's possession of the bottle in the cell in which he lives alone permits the reasonable inference he had actual knowledge of the shank within the bottle.

Walden also argues the hearing officer and DOC erred by rejecting his version of the events and his claim he was unaware the shank was in the bottle. The hearing officer expressly "discredit[ed]" Walden's version of the events, and noted it was not supported by Walden's witness or any other credible record evidence. We defer to the hearing officer's findings, see Taylor, 158 N.J. at 659, and affirm the DOC's decision because it is supported by substantial credible evidence and Walden has not demonstrated it is arbitrary, capricious, or unreasonable, see Jenkins, 412 N.J. Super. at 259.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION