**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1029-18T3

OSHEA CLARKE,

      Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____

Submitted November 7, 2019 – Decided December 16, 2019

Before Judges Nugent and DeAlmeida.

On appeal from the New Jersey Department of Corrections.

Oshea Clarke, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Kimberly Gail Williams, Deputy Attorney General, on the brief).

PER CURIAM

Oshea Clarke, an inmate at Northern State Prison (NSP), appeals from the October 17, 2018 final determination of the Department of Corrections (DOC) adjudicating him guilty of a disciplinary infraction, fighting with another person. N.J.A.C. 10A:4-4.1(a)(2)(i) *.004.  We reverse and remand.

I.

The following facts are derived from the record.  On September 23, 2018, Corrections Officer Rosario reported he saw Clarke and inmate Porter "fighting[,] exchanging close blows" in a housing unit.  As a result of Rosario's report, Clarke was charged with violating N.J.A.C. 10A:4-4.1(a)(2)(i) *.004.

Prior to the start of a disciplinary hearing, Clarke was assigned the assistance of counsel substitute.  The hearing officer adjourned the hearing several times to obtain additional information about the alleged infraction.  An investigating Sergeant obtained statements from six inmate witnesses named by Clarke, a clarifying statement from Rosario, and a copy of a surveillance video recording.  In addition, the hearing officer granted Clarke's request for written cross-examination of Rosario.

In a written statement expanding on his initial report, Rosario stated he saw Clarke and Porter exchanging close blows by the hot water machine.  According to Rosario, after the fight, Clarke "ran to the cage area and inmate

[P]orter went towards the cage area."  Rosario continued, "[a]t this point[,] I gave inmate Porter a direct order to stop and he complied."

Rosario's responses to Clarke's written cross-examination questions were consistent with the officer's two written reports.  In the answers, Rosario stated Clarke initiated the confrontation with Porter, did not try to avoid a physical altercation, and did not do "all he could to flee from the altercation."  Rosario did not recall if Porter had anything in his hand during the fight.

Clarke submitted a request to the Administrator of NSP to undergo a polygraph examination pursuant to N.J.A.C. 10A:3-7.1(a)(1).  In his request, Clarke denied engaging in any physical confrontation with Porter.  He stated he saw Porter approaching him with a sock containing a heavy object in one hand and a cup containing a liquid in the other hand.  According to Clarke, he realized Porter was about to assault him, and ran to the cage area of the housing unit to escape.[1]  Clarke argued he was entitled to a polygraph examination because Rosario's reported version of the incident directly contradicted Clarke's version. The Administrator denied Clarke's request, concluding the hearing officer would address credibility at the hearing.

---

[1]  According to Clarke, it is common for an inmate to throw liquid in the face of another inmate prior to hitting that inmate with a sock containing a heavy object.

DOC produced a video surveillance recording of the cage area of the housing unit. The recording shows Clarke running to a large cage in the housing unit from the area of the hot water machine. Clarke stops at the entrance to the cage, looking in the direction from which he came. Shortly thereafter, Porter runs into the frame, carrying what appears to be a sock containing a heavy object. As he rushes toward Clarke, Clarke backs away farther into the cage away from Porter. Porter, in an apparent agitated state, retreats, but paces around the area, appearing to shout in Clarke's direction. Corrections officers then enter, at which time Clarke and Porter assume prone positions on the floor.[2]

Having reviewed the video, Clarke requested additional video recordings from two other "angles" in the housing unit. According to Clarke, although the recording from the cage area supported his version of events, he sought production of the recordings from two other video cameras in the unit, which he believed would show when he first encountered Porter. The hearing officer requested the additional recordings, but was informed the recording from the cage area was the "only available angle" of the incident.

At the hearing, the hearing officer reviewed Rosario's written statements and cross-examination answers, and a written statement from Clarke denying a

_____

[2] At our direction, DOC submitted a copy of the recording for our review.

physical confrontation with Porter. In addition, the hearing officer viewed the video recording from the cage area. She noted her acceptance of DOC's representation the recording was the only available angle of the incident.

The hearing officer also considered written statements from six inmate witnesses. Porter denied he and Clarke engaged in a physical confrontation. Inmate Ansuman stated while he was in his cell, he "all of a sudden" saw Clarke running and told him to come to his cell. Ansuman stated Clarke and Porter did not fight and Rosario "had his head down" and could not see what transpired between the inmates. Inmate Jackman stated he saw Clarke "backing up from the hot water machine with his hands in the air" and that no fight took place. Inmate Burton reported seeing "a few guys . . . having a disagreement" but that "nobody threw a punch." Inmate Bridges stated he was in the doorway of his cell when "suddenly some guy in the cell next to mine started getting loud, which caused Clarke and a couple others to back away and even flee out of the day space." Finally, inmate Leonard stated he "saw Clarke at the water and others move because something was coming our way."

The hearing officer adjudicated Clarke guilty of the offense. She found Clarke offered no evidence to contradict Rosario's reports. The hearing officer found the statements of the inmate witnesses provided no credible evidence

A-1029-18T3

exonerating Clarke. In addition, the hearing officer noted, based on her knowledge of prison subculture, it was possible during the several adjournments of the hearing Clarke communicated with the inmate witnesses to obtain favorable statements, "negating the value of those statements."

Finally, the hearing officer found the video recording from the cage area provided no evidence contradicting Rosario's reports because the area in which the confrontation took place is outside the view of the camera. The hearing officer found Clarke's flight from Porter is not substantial evidence the two inmates did not engage in a fight, as Clarke could have fled after striking Porter.

The hearing officer sanctioned Clarke to: (1) ninety-one days in administrative segregation; (2) a thirty-day loss of recreation privileges; and (3) a ninety-one-day loss of commutation credits. The hearing officer determined the sanctions were appropriate considering Clarke's prior disciplinary history and necessary to deter fighting at the institution.

Clarke appealed the adjudication to the NSP Administrator. On October 17, 2018, a designee of the Administrator upheld the adjudication and sanctions.

This appeal followed. Clarke makes the following arguments:

POINT ONE

THE DISCIPLINARY HEARING OFFICER'S (DHO)
GUILTY FINDING AND THE ADMINISTRATOR'S

A-1029-18T3

DECISION TO UPH[O]LD HER FINDING OF THE *004 INFRACTION WAS ARBITRARY, CAPRICIOUS, AND UNREASONA[BL]E.

A. THE DISCIPLINARY HEARING OFFICER'S GUILTY FINDING WAS NOT BASED ON SUBSTANTIAL EVIDENCE IN THE RECORD.

B. THE HEARING OFFICER ERRONEOUSLY PLACED THE BURDEN OF PROOF ON THE APPELLANT TO PROVE THAT HE DID NOT COMMIT THE ALLEGED PROHIBITED ACT.

POINT TWO

THE DENIAL OF APPELLANT'S REQUEST FOR COMPLETE VIDEO FOOTAGE DENIED HIM HIS RIGHT TO DUE PROCESS.

POINT THREE

THE DENIAL OF THE APPELLANT'S REQUEST FOR A POLYGRAPH EXAMINATION WAS ERRONEOUS AND DENIED HIM HIS RIGHT TO DUE PROCESS.

II.

Our review of a final agency decision is limited. Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). Reversal is appropriate only when the agency's decision is arbitrary, capricious, or unreasonable, or unsupported by substantial credible evidence in the record as a whole. Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980); see also In re Taylor, 158 N.J.

7

644, 657 (1999) (holding that a court must uphold an agency's findings, even if it would have reached a different result, so long as sufficient credible evidence in the record supports the agency's conclusions). "[A]lthough the determination of an administrative agency is entitled to deference, our appellate obligation requires more than a perfunctory review." Figueroa, 414 N.J. Super. at 191 (quoting Blackwell v. Dep't of Corr., 348 N.J. Super. 117, 123 (App. Div. 2002)). We engage in a "careful and principled consideration of the agency record and findings" relating to inmate disciplinary adjudications. Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

In a disciplinary proceeding, an inmate is not accorded the full panoply of rights afforded a defendant in a criminal prosecution. Avant v. Clifford, 67 N.J. 496, 522 (1975). Prisoners are entitled to: written notice of the charges at least twenty-four hours prior to the hearing; an impartial tribunal; a limited right to call witnesses and present evidence; a limited right to confront and cross-examine adverse witnesses; a right to a written statement of the evidence relied upon and the reasons for any sanctions; and, where the charges are complex, the assistance of a counsel substitute. Id. at 525-33; accord Jacobs v. Stephens, 139 N.J. 212 (1995); McDonald v. Pinchak, 139 N.J. 188 (1995).

A-1029-18T3

An inmate does not have the right in all instances to a polygraph examination to contest a disciplinary charge. Johnson v. N.J. Dep't of Corr., 298 N.J. Super. 79, 83 (App. Div. 1997). Instead, an inmate's request for a polygraph examination will be granted: (1) when there are issues of credibility regarding serious incidents or allegations which may result in a disciplinary charge; or (2) as part of a reinvestigation of a disciplinary charge when new evidence indicates serious issues of credibility. N.J.A.C. 10A:3-7.1(a). "An inmate's request for a polygraph examination shall not be sufficient cause for granting the request." N.J.A.C. 10A:3-7.1(c). To the contrary, N.J.A.C. 10A:3-7.1(c) "is designed to prevent the routine administration of polygraphs, and a polygraph is clearly not required on every occasion that an inmate denies a disciplinary charge against him." Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 23-24 (App. Div. 2005).

A "prison administrator's determination not to give a prisoner a polygraph examination is discretionary and may be reversed only when that determination is 'arbitrary, capricious or unreasonable.'" Id. at 24. "[A]n inmate's right to a polygraph is conditional and the request should be granted when there is a serious question of credibility and the denial of the examination would compromise the fundamental fairness of the disciplinary process." Id. at 20.

> Impairment [of fundamental fairness] may be
> evidenced by inconsistencies in the [corrections

officers'] statements or some other extrinsic evidence involving credibility, whether documentary or testimonial, such as a statement by another inmate or staff member on the inmate's behalf. Conversely, fundamental fairness will not be [a]ffected when there is sufficient corroborating evidence presented to negate any serious question of credibility.

[Id. at 24.]

In our view, there were serious questions of credibility before the hearing officer. The disciplinary charge against Clarke was based on the report of a single corrections officer. Clarke, Porter, and two other inmates provided statements directly contradicting the officer's report.[3] Significantly, the only available video recording of the event can be interpreted to corroborate the accounts of Clarke and the inmate witnesses. In these circumstances, it was arbitrary to deny Clarke's request for a polygraph examination. In light of our decision, we do not address Clarke's remaining arguments.

Reversed and remanded for a new hearing after administration of a polygraph examination to Clarke. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] Three other inmate statements did not directly contradict Rosario's reports. Inmate Ansuman was in his cell when he saw Clarke arrive at the cage area. Inmate Bridges purportedly saw Clarke flee from a loud inmate in an adjoining cell. Inmate Leonard saw Clarke and others move from the area of the hot water machine because "something" was coming their way.

A-1029-18T3