**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3928-19

KEVIN L. JIMENEZ a/k/a
KEVIN JIMINEZ,

      Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____

Submitted May 12, 2021 – Decided June 1, 2021

Before Judges Rose and Firko.

On appeal from the New Jersey Department of Corrections.

James S. Friedman, attorney for appellant.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).

PER CURIAM

Kevin L. Jimenez, an inmate at Southern State Correctional Facility (SSCF), appeals from a May 7, 2020 final agency decision of the New Jersey Department of Corrections (DOC), which upheld an adjudication and sanctions for committing prohibited act *.252, encouraging others to riot, N.J.A.C. 10A:4-4.1(a). We affirm.

The charges stemmed from an incident that occurred on SSCF's Housing Unit 2-Right (Unit 2R) on April 9, 2020. The incident was captured on the prison's video system cameras and recorded without sound. Jimenez and sixty-two other inmates were housed on Unit 2R, which was designated as a quarantine unit to temporarily house inmates who were exposed to COVID-19.

Around 9:20 p.m., custody staff moved twelve additional inmates to Unit 2R. As those inmates entered, they were threatened by the sixty-three inmates, who yelled and cursed at them. The twelve inmates were temporarily moved to a secure location.

At 9:30 p.m., prison officials instituted a "lock-up" order, requiring all inmates to exit the "day-space," return to their wings, and remain in their bunks until a head count was completed. Repeated orders were ignored. Instead, the inmates remained in the day-space, where they continued to watch television

and use the kiosks and telephones. Ten minutes later, several inmates pushed a large table against the tier entrance gate to block access to the unit.

According to the report issued by Major Floyd Cossaboon, all inmates housed on Unit 2R were advised "if they were not participating in the refusing [-]to[-]count and unit-wide disturbance[,] they were to go down [to] their wings and remain on their assigned bunks." Notably, "[a]t no time was any inmate observed to have counted up as ordered and remain on their assigned bunk."

Around 10:00 p.m., Cossaboon observed, via the prison's real-time monitoring system, "inmates from every wing milling about the unit. There were no wings that were not participating in their refusal to leave the day-space and 'count up.'" Because several inmates were wearing surgical masks or face coverings pursuant to the pandemic protocol, they could not be positively identified.

On April 11, 2020, Jimenez was served with the charge at issue. Jimenez pled not guilty and requested a polygraph examination. Asserting neither the video evidence nor the reporting officers positively identified any inmates who took part in the incident, Jimenez argued that insufficient evidence entitled him to a polygraph examination. A DOC administrator disagreed and denied Jimenez's request, concluding: "There [we]re no issues or any other concerns

noted that c[ould] not be addressed by the [h]earing [o]fficer at [Jimenez's] hearing."

Through his counsel substitute, Jimenez submitted a written statement denying the charge. Similar to half the inmates involved, Jimenez claimed he was in his bunk during the incident. Maintaining there was insufficient evidence to establish his identity, Jimenez claimed the DOC had "a preconceived notion to everyone's guilt."

Although Jimenez was afforded the opportunity to present witnesses on his behalf at the hearing, he declined to do so. The hearing officer also granted Jimenez's request to present confrontation questions to two officers and a lieutenant – all of whom answered the twenty written questions submitted by counsel substitute. In view of the hazards attendant to the ongoing pandemic, the hearing officer denied in-person confrontation. Because all sixty-three inmates were charged following the incident, the hearing officer denied individual requests for witnesses and evidence. Noting "the state of emergency" resulting from the pandemic caused "prisons to functionally operate with only essential personnel[,]" the hearing officer reasoned that permitting individual requests would cause "mass disruption."

4

On April 30, 2020, the hearing officer issued a written decision, concluding Jimenez "encouraged inmates to riot," thereby committing the prohibited act charged. In reaching her decision, the hearing officer found the evidence adduced at the hearing established: (1) Jimenez "was part of a group that received orders"; (2) the orders were comprehensible; (3) "[t]he orders were loud enough that the entire group could have heard the orders"; (4) the inmates had sufficient time to follow the orders; (5) none of the inmates who received the orders complied; and (6) the escort reports demonstrate that Jimenez was part of the group.

The hearing officer imposed the following sanctions: 210-day administrative segregation as a Category A offense pursuant to N.J.A.C. 10A:4-5.1(e); ninety-day loss of commutation time; and ten-day loss of recreation privileges. In doing so, the hearing officer recognized:

> In prison culture, said behaviors must be taken extremely seriously and cannot be tolerated. Inmates [sic] behaviors could have led to violence and injuries for staff and inmates. Orders are mandatory and must be followed immediately. Inmates [sic] actions caused S[pecial] O[perations] G[roup], central transportation, [and] the K[-]9 . . . unit to be dispatched and mass overtime as the entire second shift was mandatory due to this incident. Said behaviors cannot be tolerated and any future behavior of this type must be deterred for safety and security purposes. Prison[]s function on order. No mental health evaluation noted. Inmates

[sic] charge history noted. Leniency provided; max[imum] sanction not given for [C]ategory A charge.

Jimenez's administrative appeal was denied. The DOC, acting through assistant superintendent Heather Griffith, upheld the hearing officer's decision. The administrator elaborated:

> All procedural safeguards were adhered to by the [h]earing [o]fficer and found to be in accordance with [the applicable regulations]. The video supports that all inmates were actively engaged in the incident whether acting out [or] refusing to disp[e]rse. There is no video evidence that any inmate took precaution to recuse himself during the incident to his bunk or uncover his face to ensure identity for non-participation. Additionally, the custody interviews were consistent in their responses. There is no support or compelling argument to not support the sanction as written.

This appeal followed.

On appeal Jimenez raises the following points for our consideration:

> [POINT I]. The Decision Below Must Be Reversed Because the DHO's Findings and Conclusions Were Not Based On Substantial Evidence In The Record.
>
> [POINT II]. The Decision Below Must Be Reversed Because Jimenez Was Denied His Right To Confrontation.
>
> [POINT III]. The Decision Below Must Be Reversed Because Jimenez Was Denied The Opportunity To Submit To A Polygraph Examination.

6

Our scope of review of an agency decision is limited.  In re Stallworth, 208 N.J. 182, 194 (2011); Malacow v. N.J. Dep't of Corr., 457 N.J. Super. 87, 93 (App. Div. 2018).  Reviewing courts presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014).  "We defer to an agency decision and do not reverse unless it is arbitrary, capricious[,] or unreasonable or not supported by substantial credible evidence in the record."  Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010).  "'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010) (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)).

As we have long recognized, "[p]risons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment."  Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999).  A reviewing court "may not substitute its own judgment for the agency's, even though the court might have reached a different result."  Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)).  "This is particularly true when the issue under review is directed

to the agency's special 'expertise and superior knowledge of a particular field.'" Id. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)).

However, our review is not "perfunctory," nor is "our function . . . merely [to] rubberstamp an agency's decision[.]" Figueroa, 414 N.J. Super. at 191 (citation omitted). "[R]ather, our function is 'to engage in a careful and principled consideration of the agency record and findings.'" Ibid. (quoting Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000)). It is well settled that an agency's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Pursuant to N.J.A.C. 10A:4-4.1(a):

> An inmate who commits one or more of the following numbered prohibited acts shall be subject to disciplinary action and a sanction that is imposed by a Disciplinary Hearing Officer . . . . Prohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions . . . . Prohibited acts are further subclassified into five categories of severity (Category A through E) with Category A being the most severe and Category E the least severe.

A Category A offense, including prohibited act *.252 encouraging others to riot, "shall result in a sanction of no less than 181 days and no more than 365

8

days of administrative segregation per incident." A hearing officer's finding that an inmate committed a prohibited act must be supported by "substantial evidence." N.J.A.C. 10A:4-9.15(a).

Applying these standards to the present matter, we discern no basis to disturb the DOC's decision. There was substantial credible evidence in the record to support the finding of guilt. Although the inmates wore masks, the video evidence and reporting officers' statements exposed the inmates' non-compliance with the lock-up order. Recognizing Jimenez's precise role in the incident could not be established, the hearing officer nonetheless was unpersuaded by Jimenez's unsupported assertion that he had returned to his bunk. Rather, the credible evidence in the record established Jimenez, and the multitude of inmates housed on Unit 2R, defied repeated orders and refused to "count up." That conduct interfered with the administrators' attempt "to manage th[e unit's] volatile environment." Russo, 324 N.J. Super. at 584.

In addition, the sanctions, as lessened by the hearing officer, were commensurate with the severity of the infraction and authorized under N.J.A.C. 10A:4-5.1(e) for an asterisk offense. Asterisk offenses "are considered the most serious and result in the most severe sanctions[.]" N.J.A.C. 10A:4-4.1(a).

9

We have also considered and reject Jimenez's assertion that he was denied due process. Although inmates are not entitled to the same due process protections as criminal defendants, they are guaranteed certain limited protections. See McDonald v. Pinchak, 139 N.J. 188, 194 (1995); Avant v. Clifford, 67 N.J. 496, 523 (1975).

Here, Jimenez was given written notice of the charge at least twenty-four hours before the hearing was originally scheduled;[1] provided with counsel substitute; offered an opportunity to call and confront witnesses; and received a written statement of the evidence relied upon and the reasons for the discipline. Further, in view of the sheer volume of inmates charged in the same incident and the ongoing pandemic impact on personnel, we reject Jimenez's argument that he was improperly denied the right to submit individual confrontation questions. We find nothing in the record to suggest that this determination was arbitrary, capricious, or unreasonable.

Finally, we are unpersuaded by Jimenez's argument that he was improperly denied the opportunity to take a polygraph examination. We have long recognized an inmate does not have the right to a polygraph test to contest

---

[1] The hearing was held on April 30, 2020 following multiple postponements, including Jimenez's request for confrontation of officers, polygraph request, and to permit the hearing officer to review the record.

A-3928-19

a disciplinary charge. Johnson v. N.J. Dep't of Corr., 298 N.J. Super. 79, 83 (App. Div. 1997). "An inmate's request for a polygraph examination shall not be sufficient cause for granting the request." N.J.A.C. 10A:3-7.1(c). Indeed, N.J.A.C. 10A:3-7.1(c) "is designed to prevent the routine administration of polygraphs, and a polygraph is clearly not required on every occasion that an inmate denies a disciplinary charge against him." Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 23-24 (App. Div. 2005). A "prison administrator's determination not to give a prisoner a polygraph examination is discretionary and may be reversed only when that determination is 'arbitrary, capricious or unreasonable.'" Id. at 24. "[A]n inmate's right to a polygraph is conditional and the request should be granted when there is a serious question of credibility and the denial of the examination would compromise the fundamental fairness of the disciplinary process." Id. at 20.

In the present matter, the administrator determined all issues raised by Jimenez could be decided by the hearing officer. Notably, the administrator did not reference any issues of credibility raised in Jimenez's request. That is because Jimenez sought a polygraph examination to challenge the reporting officers' "conclusory statements" and lack of specific identification. However, Jimenez presented no evidence to support his bald assertion that he was in his

bunk during the incident or otherwise contradict the video evidence that none of the inmates had "counted up" or remained in their assigned bunks. Nor has Jimenez identified any extrinsic evidence in the record that would involve credibility. We are therefore satisfied the administrator did not abuse her discretion by denying the request for a polygraph examination.

To the extent we have not specifically addressed Jimenez's remaining contentions, we find they lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-3928-19