NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4210-15T1

MARTIN ROGERS,

 Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

 Respondent.
_______________________

 Submitted July 12, 2017 – Decided September 12, 2017

 Before Judges Simonelli and Carroll.

 On appeal from the New Jersey Department of
 Corrections.

 Martin Rogers, appellant pro se.

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Lisa A. Puglisi,
 Assistant Attorney General, of counsel;
 Suzanne Davies, Deputy Attorney General, on
 the brief).

PER CURIAM

 Appellant Martin Rogers appeals from the August 6, 2015 final

agency decision of respondent New Jersey Department of Corrections

(DOC), which affirmed the decision of a hearing officer finding
him guilty of, and imposing disciplinary sanctions for, committing

prohibited acts *.004, fighting with another person, and *.402,

being in an unauthorized area, in violation of N.J.A.C. 10A:4-

4.1(a). For the following reasons, we affirm.

 Rogers is serving a forty-year term of imprisonment with a

twenty-two-year period of parole ineligibility for convictions of

robbery, aggravated assault, resisting arrest, terroristic

threats, possession of a weapon, and receiving stolen property.

He is presently incarcerated at Northern State Prison.

 The record reveals that on July 20, 2015, Rogers was an inmate

at South Woods State Prison (SWSP). On that day, Senior

Corrections Officer Hunter was seated at his desk near the area

of the religious services room when he heard loud arguing coming

from the room and went to investigate. When he entered the room,

he saw Rogers and inmate Summers arguing and acting aggressively.

Rogers was supposed to be returning to his unit and Hunter had not

given him permission to be in the religious services room. Summers

was seated at a desk inside the religious services room and Rogers

was standing on the other side with his hands on the desk. Hunter

ordered them to separate and for Rogers to leave the room.

Ignoring Hunter's order, Rogers remained in the room, moved from

where he was standing, put his hand up to Summers' chest, and

pushed him. Summers pushed Rogers' hand away. Rogers then swung

 2 A-4210-15T1
at Summers and Summers punched Rogers in the head, rendering him

unconscious. Hunter called a Code 331 and both inmates were

escorted to detention.

 Summers gave a statement that corroborated the above facts.

Summers also said he was permitted to be in the religious services

area, Rogers was not, and Rogers became aggressive and initiated

the confrontation.

 Rogers gave a different version of the incident. He said in

his initial statement that Summers got upset because he could not

walk up and down stairs to complete his required paralegal work

due to his disability, and thus, Summers struck him in the head,

causing him to fall to the floor unconscious. In a later

statement, Rogers added that he "politely asked Summers" a

question, at which point "Summers began to get loud," so he told

Summers to "calm down!" Hearing this, Hunter ordered Rogers out

of the room and Summers struck him in the head as he was leaving.

Rogers denied fighting with, pushing, or swinging at Summers.

 On July 21, 2015, the DOC served Rogers with the disciplinary

charges. The hearing, initially scheduled for July 22, 2015, was

postponed because Rogers requested a polygraph, claiming Hunter

blatantly lied about witnessing a fight, and he was the subject

1
 A Code 33 signals an emergency situation and alerts other
corrections officers to respond and provide assistance.

 3 A-4210-15T1
of retaliation because he had filed a federal lawsuit against

several corrections officers at the SWSP. On July 27, 2015, SWSP

administrator denied the request for a polygraph, finding no

credibility issues regarding Hunter or the investigation, and no

new evidence pertaining to the issue of credibility.

 On July 31, 2015, the hearing officer asked Hunter certain

confrontation questions Rogers had propounded. The hearing

officer denied certain questions and stated the reason for such

denial in accordance with N.J.A.C. 10A:4-9.14(d) and (f).

 The hearing began on August 3, 2015. Rogers pled not guilty,

requested and received counsel substitute, was offered the

opportunity to confront/cross-examine witnesses, and declined the

opportunity to call witnesses on his behalf. As to charge *.004,

Rogers stated Summers struck him first, rendering him unconscious;

there were inconsistencies in Hunter's reports and confrontation

answers; and he was the only one in the fight to sustain injury.

As to charge *.402, Rogers stated Hunter was the relief officer

and the regular officer always allowed him to enter the religious

services room.

 After reviewing the evidence, the hearing officer found

Rogers guilty of the charges and, in accordance with N.J.A.C.

10A:4-9.15, issued a summary of the facts supporting each charge.

The hearing officer determined that Summers was not the initial

 4 A-4210-15T1
aggressor; Summers could not retreat; and Summers did not use more

force than necessary to defend himself. The hearing officer also

found Rogers was in an unauthorized area without permission. The

hearing officer sanctioned Rogers to 120 days' administrative

segregation, 120 days' loss of commutation time, and 15 days' loss

of recreation privileges.

 On August 3, 2015, Rogers filed an administrative appeal,

requesting leniency, and again requesting a polygraph. On August

6, 2015, the assistant superintendent upheld the hearing officer's

decision and sanction. The assistant superintendent determined

there was no misinterpretation of facts, the sanction was

appropriate, and Rogers was not entitled to leniency. This appeal

followed.

 On appeal, Rogers raises the following contentions:

 POINT I

 THE HEARING OFFICER DEPRIVED ROGERS OF DUE
 PROCESS OF LAW DURING CONFRONTATION AND CROSS-
 EXAMINATION.

 (a) The hearing officer omitted portions of
 Hunter's testimony.

 (b) The hearing officer failed to ask Hunter
 questions she pre-approved.

 POINT II

 THE HEARING OFFICER FAILED TO PROPERLY
 CONSIDER THE CONFLICTING EVIDENCE IN THE

 5 A-4210-15T1
 RECORD THAT WEIGHED AGAINST GUILTY FINDINGS
 ON BOTH THE [*.004] AND [*.402] CHARGES.

 POINT III

 THE ADMINISTRATOR'S DENIAL OF ROGERS'
 POLYGRAPH REQUEST WAS ARBITRARY, CAPRICIOUS
 AND UNREASONABLE.

 "[We] have 'a limited role' in the review of [agency]

decisions." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting

Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). "[A]

'strong presumption of reasonableness attaches to [an agency

decision].'" In re Carroll, 339 N.J. Super. 429, 437 (App. Div.)

(quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993),

aff’d, 135 N.J. 306 (1994)), certif. denied, 170 N.J. 85 (2001).

We reverse an agency's decision only where it is arbitrary,

capricious, unreasonable, or unsupported by credible evidence in

the record. Henry, supra, 81 N.J. at 579-80; Ramirez v. Dep't of

Corr., 382 N.J. Super. 18, 23 (App. Div. 2005). An adjudication

of guilt for a charge against an inmate must be supported by

"substantial evidence." N.J.A.C. 10A:4-9.15(a). "'Substantial

evidence' means 'such evidence as a reasonable mind might accept

as adequate to support a conclusion.'" Figueroa v. N.J. Dep't of

Corr., 414 N.J. Super. 186, 192 (App. Div. 2010) (quoting In re

Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)). The term

has also been defined as "evidence furnishing a reasonable basis

 6 A-4210-15T1
for the agency's action." McGowan v. N.J. State Parole Bd., 347

N.J. Super. 544, 562 (App. Div. 2002).

 A prison disciplinary proceeding "'is not part of a criminal

prosecution and thus the full panoply of rights due a defendant

in such a proceeding does not apply.'" Avant v. Clifford, 67 N.J.

496, 522 (1975) (quoting Morrissey v. Brewer, 408 U.S. 471, 480,

92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484, 494 (1972)). However, in

such proceedings, prisoners have certain procedural due process

rights, including a limited right to call witnesses and present

documentary evidence, as well as a right to confront and cross-

examine witnesses where necessary "for an adequate presentation

of the evidence, particularly when serious issues of credibility

are involved[.]" Id. at 529-30.

 An inmate's due process rights do not automatically include

a right to a polygraph examination. See Johnson v. N.J. Dep't of

Corr., 298 N.J. Super. 79, 83 (App. Div. 1997) (stating that an

inmate's mere request for a polygraph examination shall not be

sufficient cause, in and of itself, for granting the request);

Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 23-24 (App. Div.

2005) (explaining that N.J.A.C. 10A:3-7.1 "is designed to prevent

the routine administration of polygraphs, and a polygraph is

clearly not required on every occasion that an inmate denies a

disciplinary charge against him.") "[A]n inmate's right to a

 7 A-4210-15T1
polygraph is conditional and the request should be granted when

there is a serious question of credibility and the denial of the

examination would compromise the fundamental fairness of the

disciplinary process." Id. at 20. Regarding the issue of

fundamental fairness, the Ramirez court held that:

 Impairment [of fundamental fairness] may be
 evidenced by inconsistencies in the
 [officer's] statements or some other extrinsic
 evidence involving credibility, whether
 documentary or testimonial, such as a
 statement by another inmate or staff member
 on the inmate's behalf. Conversely,
 fundamental fairness will not be effected when
 there is sufficient corroborating evidence
 presented to negate any serious question of
 credibility.

 [Id. at 24.]

 Based upon our review of the record, we are satisfied that

Rogers was not entitled to a polygraph. There are no

inconsistencies in Hunter's two reports of the incident or his

answers to Rogers' confrontation questions that would raise an

issue of credibility. Accordingly, the denial of Rogers' request

for a polygraph did not compromise the fundamental fairness of the

disciplinary process.

 We are also satisfied that Rogers was afforded all due process

protections required by Avant, supra, 67 N.J. at 525-33; the

hearing officer's decision was based on substantial evidence that

Rogers committed the prohibited acts; and the DOC's decision was

 8 A-4210-15T1
not arbitrary, capricious, or unreasonable. Ramirez, supra, 382

N.J. Super. at 23 (citing Henry, supra, 81 N.J. at 579-80);

N.J.A.C. 10a:4-9.15(a).

 Affirmed.

 9 A-4210-15T1