**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0434-21

IN THE MATTER OF LINDEN
BOARD OF EDUCATION,

    Petitioner-Appellant,

v.

LINDEN EDUCATION
ASSOCIATION,

    Respondent-Respondent.

_____

        Argued October 4, 2022 – Decided October 13, 2022

        Before Judges Geiger and Susswein.

        On appeal from the New Jersey Public Employment Relations Commission, PERC No. 2021-29.

        Jorge R. De Armas argued the cause for appellant (Scarinci Hollenbeck, LLC, attorneys; Robert E. Levy and Nathanya Simon, of counsel and on the briefs; Jorge R. De Armas, on the briefs).

        William P. Hannan argued the cause for respondent Linden Education Association (Oxfeld Cohen, PC, attorneys; William P. Hannan, of counsel and on the brief).

Frank C. Kanther, Deputy General Counsel, argued the cause for respondent New Jersey Public Employment Relations Commission (Frank C. Kanther, on the brief).

PER CURIAM

Petitioner Linden Board of Education (Board) appeals from a final decision of the Public Employment Relations Commission (PERC) denying the Board's scope of negotiation petition that sought to restrain binding arbitration of a grievance filed by respondent Linden Education Association (Association) contesting the reduction of certain teaching staff members' salaries when they were transferred from 12-month to 10-month positions for the 2020-2021 school year. PERC found the Board had a managerial prerogative and statutory right to leave positions unfilled for educational or budgetary reasons and to reassign teaching staff to positions of need. Based on our review of the record and applicable legal principles, we affirm.

We take the following facts from the record. M.P. and R.M.[1] (collectively grievants) were teaching staff members employed by the Board in 12-month positions. The terms and conditions of their employment were governed by a collective negotiations agreement (CNA). In July 2020, the Board eliminated

---

[1] The affected employees are referred to by initials in the record.

grievants' positions for the 2020-2021 school year and reassigned them to 10-month teaching positions. The reassignments placed grievants on the CNA's salary guide for 10-month teachers, resulting in a reduction in compensation compared to their former 12-month positions.

The Association filed a grievance that asserted that the Board violated Article XV of the CNA by reducing grievants' salaries when they were involuntarily transferred by the Board from 12-month to 10-month positions for the 2020-2021 school year. As a remedy, the Association sought that grievants' salaries be maintained at their 12-month salary level "until such time that the 10-month salary guide catches up to their 12-month compensation."[2]

The Board denied the grievance at every step. On December 22, 2020, the Association filed a request for binding arbitration. In response, on January 20, 2021, the Board filed a scope of negotiations petition to restrain binding arbitration of the grievance.

The Board asserted that because it had a non-negotiable managerial prerogative pursuant to N.J.S.A. 18A:28-9 to abolish positions for reasons of economy or other good cause, its decision to eliminate grievants' 12-month

_____

[2] PERC noted that the parties referred to this type of temporary compensation freeze as "redlining salaries," whereas PERC has typically referred to this practice as "red-circling" salaries.

positions and reassign them to 10-month positions at a reduced salary was not arbitrable. The Board argued that grievants' prior positions, Instructional Coach and Site Coordinator, were eliminated for the 2020-2021 school year due to reduced state aid and increased costs associated with COVID-19 measures, and that grievants were needed to fill vacancies in essential teaching positions. The Board maintained that when grievants were transferred from eliminated 12-month positions to 10-month positions, the resulting loss of compensation is not arbitrable because the dominant concern was the Board's managerial prerogative to determine educational policy. The Board also contended that any alleged violations of tenured teachers' salaries should be heard by the Commissioner of Education.

The Association asserted the grievance is arbitrable because it only contests the reduction in salaries caused by the transfers, not the Board's authority to transfer grievants or to leave the 12-month positions unfilled. The Association maintained that the sole remedy sought – red-circling grievants' salaries to avoid a reduction in compensation – does not interfere with the Board's prerogative to transfer grievants to the 10-month positions. The Association also contended that the 12-month positions were left unfilled, not eliminated.

A-0434-21

PERC made the following pertinent findings:

> The Association represents a broad-based unit of Board employees including certificated instructional and educational services positions, technology technicians, secretarial and clerical employees, paraprofessionals and school aids, hall monitors, attendance officers, and crisis intervention aids. The Board and Association are parties to a CNA in effect from July 1, 2018 through June 30, 2021. The grievance procedure ends in binding arbitration.
>
> Article XV, paragraph C. of the CNA, entitled "Discipline," provides:
>
>> No employee shall be disciplined, reprimanded, reduced in rank or compensation or deprived of any professional advantage without just cause. Any such action asserted by the Board, or any agent or representative thereof, shall be subject to the grievance procedure herein set forth.
>
> For the 2019-2020 school year, M.P. was appointed to the 12- month position of Instructional Coach. For the 2019-2020 school year, R.M. was appointed to the 12-month position of Site Coordinator (21st Century Grant). On July 30, 2020, the Board eliminated the 12-month Instructional Coach and Site Coordinator (21st Century Grant) positions for the 2020-2021 school year. The Board reassigned M.P. and R.M. back to 10-month teaching positions for the 2020-2021 school year. M.P. was reassigned to Teacher of Biology and R.M. was reassigned to Teacher of English. These reassignments placed M.P. and R.M. on the CNA's salary guide for 10-month teachers, which resulted in a

loss of compensation compared to their 12-month positions.

[Linden Superintendent Dr. Marnie] Hazleton certifies that the 12-month positions were eliminated for reasons of economy and efficiency, including cuts in state aid, the need to utilize funds for COVID-19 reopening compliance, and the need to staff classes with appropriately certified teachers to directly instruct students. She certifies that the Board had to reallocate funds to purchase PPE and other supplies for the District's COVID-19 reopening plans. Hazelton certifies that due to the Families First Coronavirus Response Act (FFCRA), employees were entitled to additional paid sick leave and child care leave, which resulted in a shortage of available teaching staff for in-person instruction. Hazelton certifies that after discussing staffing needs with the Director of Human Resources, the Board decided to eliminate M.P.'s 12-month Instructional Coach position and R.M.'s 12-month Site Coordinator position and reassign them to vacant 10-month teaching positions for which they held teaching certificates and tenure.

On July 28, 2020, the Board's former Director of Human Resources provided a statement to M.P. and R.M. explaining that the reason for the involuntary transfer was to avoid a Reduction in Force and loss of jobs by moving teaching staff members serving in support positions back to essential teaching positions. Hazelton certifies that when teaching staff are reassigned from 12-month to 10-month positions, they do not retain the salary of their prior positions but are compensated based on the negotiated 10-month salary guide.

6

PERC noted that its jurisdiction is narrow. Following the Supreme Court's holding in Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 154-55 (1978), PERC explained that in determining whether the subject matter in dispute was within the scope of collective negotiations and the scope of the arbitration clause of the CNA, it "[does] not consider the merits of the grievance or any contractual defenses the employer may have." PERC then set forth the standards adopted in Local 195, IFPTE v. State, 88 N.J. 393, 404-05 (1982), for determining whether a subject is mandatorily negotiable:

> [A] subject is negotiable between public employers and employees when (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy. To decide whether a negotiated agreement would significantly interfere with the determination of governmental policy, it is necessary to balance the interests of the public employees and the public employer. When the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions.

PERC rejected the Association's distinction between leaving positions unfilled versus eliminating them. It noted that the Commissioner of Education had previously found "that a school board's decision to leave a position unfilled

A-0434-21

is equivalent to abolishing the position."  PERC explained that "[t]he Board has a statutory right and managerial prerogative to abolish positions and reduce its staff for organizational and budgetary reasons pursuant to N.J.S.A. 18A:28-9." PERC recognized that "[t]he Board has a non-negotiable 'managerial duty to deploy personnel in the manner which it considers most likely to promote the overall goal of providing all students with a thorough and efficient education.'" (quoting Ridgefield Park, 78 N.J. at 156).  PERC noted, however, that "a public employer ordinarily has a duty to negotiate before reducing its employees' work hours and compensation."

In balancing educational policy goals and negotiated terms and conditions of employment, PERC relied upon Bd. of Educ. of Woodstown-Pilesgrove Reg'l Sch. Dist. v. Woodstown-Pilesgove Reg'l Educ. Ass'n, in which the Court stated "[i]t is only when the result of bargaining may significantly or substantially encroach upon the management prerogative that the duty to bargain must give way to the more pervasive need of educational policy decisions."  81 N.J. 582, 593 (1980).  Because the Association did not challenge the Board's prerogative to leave grievants' former positions unfilled or to transfer them to teaching positions it needed to fill, PERC found there was "no[] interference with the Board's managerial prerogative to determine educational policy by eliminating

positions and transferring staff to positions of need." PERC also found there was "no[] significant interference with the Board's right pursuant to N.J.S.A. 18A:28-9 to eliminate positions for reasons of economy because the grievants do not seek to continue to advance in salary based on the 12-month salary guides for their previous positions." "Under these narrow circumstances," PERC found that the Association's claim that the CNA had been violated due to grievants' reduction in compensation was "legally arbitrable and severable from the Board's managerial prerogative to eliminate positions for educational or budgetary reasons." Accordingly, PERC denied the Board's application to restrain binding arbitration. This appeal followed.

The Board raises the following points for our consideration:

> POINT I
>
> THE COMMISSION'S DETERMINATION AS A MATTER OF LAW UNREASONABLY ENCROACHES ON THE BOARD'S MANAGERIAL PREROGATIVES TO REASSIGN TEACHERS TO POSITIONS WITH NEGOTIATED SALARY GUIDES WHEN THEIR FORMER POSITIONS ARE ELIMINATED.
>
>> A. The Commission Correctly Recognized the Board's Managerial Prerogative to Institute a Reduction in Force.
>>
>> B. The Commission However Erroneously Concluded that the Teacher[s] Have a Vested

Compensation Right to Compensation that Outweighs the Board's Managerial Prerogative.

C. The Elimination of the Teachers' Former Positions and Subsequent Reassignment to 10-Month Position with Negotiated 10-Month Salary Guides is Beyond the Scope of Negotiations.

POINT II

THE COMMISSION[] PROVIDES NO BASIS FOR ITS CLEAR DEPARTURE FROM PAST APPLICABLE JUDICIAL AND COMMISSION PRECEDENT THAT HOLDS THAT IMPACTS ON COMPENSATION FROM A RIF RESULTING IN THE ELIMINATION OF A POSITION ARE NOT SUBJECT TO NEGOTIATION.

A. Applicable Precedent Requires Arbitration to be Restrained.

B. As the Commission Determined that the Teachers' Former Positions Were Eliminated or "Abolished," the Commission Was Required to Restrain Arbitration as the Association Conceded.

C. The Commission may not Decline to Restrain Arbitration Based on its Interpretation of the School Laws.

POINT III

AS THE COMMISSION IS WITHOUT AUTHORITY TO ENFORCE THE SCHOOL LAWS, ITS DETERMINATION MUST BE REVERSED, AND ARBITRATION RESTRAINED.

10

POINT IV

THE COMMISSION'S PROPOSED REMEDY
IMPROPERLY INVITES AN ARBITRATOR TO
VIOLATE THE TERMS OF THE CNA'S SALARY
GUIDES.

We affirm substantially for the reasons expressed by PERC in its thorough and well-reasoned final decision. We add the following brief comments.

Our role in reviewing the decision of an administrative agency is limited. Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009). We will not disturb the determination of an administrative agency absent a clear showing that it was arbitrary, capricious, or unreasonable. Id. at 10; State v. Pro. Ass'n of N.J. Dep't of Educ., 64 N.J. 231, 258-59 (1974). This standard of review applies to appeals from PERC's negotiability determinations. See e.g., Hunterdon Cnty. Bd. of Chosen Freeholders and Commc'ns Workers of Am., 116 N.J. 322, 329-31 (1989); In re Belleville Educ. Ass'n, 455 N.J. Super. 387, 400 (App. Div. 2018); Twp. of Franklin Twp. v. Franklin Twp. PBA Local 154, 424 N.J. Super. 369, 377-78 (App. Div. 2012).

> In determining whether an agency action is arbitrary, capricious, or unreasonable, a reviewing court must examine: (1) [w]hether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying

11

the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 238 (App. Div. 2019) (quoting In re Carter, 191 N.J. 474, 482 (2007))].

Substantial evidence has been defined as "evidence furnishing a reasonable basis for [an] agency's action.'" Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010) (quoting McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 562 (2002)).

"Decisions of administrative agencies carry with them a presumption of reasonableness." Id. at 191. "Even if a court may have reached a different result had it been the initial decision maker, it may not simply 'substitute its own judgment for the agency's.'" Circus Liquors, 199 N.J. at 10 (quoting Carter, 191 N.J. at 483). Reviewing courts "must be mindful of, and deferential to, the agency's 'expertise and superior knowledge of a particular field.'" Ibid. (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

The Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -64, requires public employers and majority representatives to negotiate the terms and conditions of employment. N.J.S.A. 34:13A-5.3. Mandatorily negotiable subjects are arbitrable. Old Bridge Twp. Bd. of Educ. v. Old Bridge Twp. Educ.

Ass'n, 98 N.J. 523, 527-28 (1985). "The 'prime examples' of mandatorily negotiable terms and conditions of employment under New Jersey case law 'are rates of pay and working hours.'" Robbinsville Twp. Bd. of Educ. v. Washington Twp. Educ. Ass'n, 227 N.J. 192, 199 (2016) (quoting Local 195, 88 N.J. at 403).

PERC has been granted "broad authority and wide discretion in a highly specialized area of public life," and has been entrusted with deciding scope of negotiations petitions due to its ability "to use expertise and knowledge of circumstances and dynamics that are typical or unique to the realm of employer-employee relations in the public sector." Hunterdon Cnty., 116 N.J. at 328. To that end, PERC has primary jurisdiction to determine whether the subject matter of a "dispute is within the scope of collective negotiations." N.J.S.A. 34:13A-5.4(d); Ridgefield Park, 78 N.J. at 154. "[A]lthough N.J.S.A. 18A:28-9 reposes the substantive managerial decision of when to effect a layoff in the Board, the statute does not automatically preempt all negotiation surrounding that decision." Old Bridge, 98 N.J. at 529.

"The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006). The Board has not satisfied that burden. The record amply supports PERC's findings of

fact. Its conclusions are consonant with applicable legislative policies and precedential case law. The denial of the Board's application to restrain binding arbitration was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0434-21