**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2188-22

ALTOWAN NIXON,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted March 11, 2025 – Decided March 28, 2025

Before Judges Susswein and Perez Friscia.

On appeal from the New Jersey Department of Corrections.

Altowan Nixon, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Dorothy M. Rodriguez, Deputy Attorney General, on the brief).

PER CURIAM

Altowan Nixon, currently incarcerated at Northern State Prison (NSP), appeals from the April 12, 2024 amended final agency decision of the New Jersey Department of Corrections (DOC), which upheld the denial of his request to receive approximately one hundred videos that it determined were lewd, obscene, or sexually explicit under N.J.A.C. 10A:18-2.14(a)(6). We reverse and remand.

I.

Nixon purchased videos between 2021 and 2022 through the JPay[1] electronic kiosk located at NSP. The DOC determined Nixon's video correspondences violated N.J.A.C. 10A:18-2.14(a)(6), as the videos contained prohibited content.

On April 7, 2022, Nixon submitted an inmate inquiry form on JPay, questioning why the DOC withheld "electronic correspondence [videos]" and stating his belief that the videos did not violate the DOC's policies. Five days later, a DOC employee responded that the "NSP mailroom does not access any [JPay] video[s] or [emails]." On April 16, Nixon filed an inmate grievance form requesting assistance regarding the missing electronic videos. He referenced

---

[1] JPay is a private company that partners with correctional facilities to provide inmates the ability to send and receive digital messages.

fifty-eight separate videos in his inquiry. The same employee responded that the "mailroom does not handle [JPay] issues" and does "not have access to view any videos that come thr[ough] [JPay]."

On April 18, Nixon again inquired into why the DOC had "removed" his purchased videos and noted that the DOC also withheld photographs. He requested that the DOC "look into" his missing correspondence. Eight days later, another DOC employee responded to Nixon, advising him that the "[e]mails and [v]ideos are subject to monitoring, review[,] and approval prior to distribution."

Several months later, Nixon inquired about the status of approximately one hundred and thirty videos he purchased. He stated the videos did not violate the New Jersey Administrative Code because they did not contain nudity and were not obscene material, pornography, or sexually explicit. An employee responded, directing Nixon to clarify his inquiry. In December 2022, Nixon again inquired as to the status of the videos and continued to maintain that they did not violate the DOC's policies.

On December 21, a DOC officer responded that "[t]he only products and services that [the DOC] operate[s], control[s,] or endorse[s] . . . [is its] Securus-branded or JPay-branded [p]roducts[,] and the [p]roducts that are identified as

being supplied by [the DOC]. [The DOC] [is] not responsible for the products or service of any other businesses or individuals, or the content of their websites." On January 4, 2023, Nixon submitted another grievance, averring that his "correspondences/videos ha[d] been withheld without explanation" and that he had not been provided the "right to appeal."

On February 16, a DOC lieutenant notified Nixon that there were no rejected items on his account, but later the same day, the lieutenant advised Nixon that he had reexamined the account for the previous six months and found "unauthorized content . . . returned to the sender." The lieutenant also forwarded Nixon an overview of the video and photograph policies, which included the DOC's authority to monitor content and reject prohibited correspondence. Nixon appealed, contending the videos violated no DOC policies, and the DOC never returned the videos to the senders. On February 21, the lieutenant issued the DOC's decision to Nixon, outlining that the videos were rejected as prohibited correspondence, the items' statuses indicated the videos were returned to sender, and "if [he] purchased items through third parties, that [was] against JP[ay] policies and at [his] own risk."

On February 20, 2024, after Nixon appealed, the DOC moved for a remand to supplement the record and its decision, which we granted. On April 12, the

DOC's lieutenant issued an amended final decision still rejecting the distribution of the videos. The lieutenant determined the videos were prohibited because they were "considered lewd," "obscene," and "sexually explicit." Further, he provided an accompanying list of the over one-hundred videos reviewed with specific violations delineated. In accordance with N.J.A.C. 10A:18-2.14(a)(6), the lieutenant explained that "[e]xtreme close up photos, and/or any touching, manipulation, spreading, or opening of the genitals or buttocks (any gender) is considered lewd and obscene." The lieutenant's list of rejection reasons was extensive and based on explicit content including: "nudity"; a "sex act with a teddy bear"; "rubbing breasts"; "spanking herself/spreading"; "two females touching each other"; "sexually explicit dancing"; "sex talk"; "spreading oil on her back/touching herself"; "lewd/sexual moaning"; and "manipulating/close[-]up/sex toy." After Nixon received the amended final decision, he submitted an appeal to the DOC's Director John Falvey.[2] Falvey, by letter dated June 18,

---

[2] On appeal, Nixon references his appeal on April 21, 2024 to Falvey, but we have not been provided the documentation. We note Falvey's letter dated June 18, 2024 also references Nixon's appeal correspondence "date[d] June 18, 2024" which we have not been provided. See Rule 2:6-1(a)(1)(I) (stating the appendix must contain parts of the record "essential to the proper consideration of the issues").

A-2188-22

2024, advised Nixon that the lieutenant's amended final decision represented the DOC's "final agency decision."

On July 10, Nixon filed a supplemental brief and appendix for our consideration. Nixon contends the DOC's actions of withholding his videos and failing to provide him with a meaningful appeal were arbitrary, capricious, and unreasonable.[3]

II.

Our scope of review of an agency decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011). As we have long recognized, "[P]risons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment." Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 238 (App. Div. 2019) (quoting Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999)). "We [therefore] defer to an agency decision and do not reverse unless it is arbitrary, capricious[,] or unreasonable or not supported by substantial credible evidence in the record." Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010).

---

[3] Nixon, in support of his arguments, references another inmate's appeal in which we granted the DOC's motion for a remand. We have not considered Nixon's argument as the cited matter does not "constitute precedent . . . binding upon any court." R. 1:36-3.

"A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" Blanchard, 461 N.J. Super. at 238-39 (quoting Stallworth, 208 N.J. at 194). "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Stallworth, 208 N.J. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)). But "our review is not 'perfunctory,' nor is 'our function . . . merely [to] rubberstamp an agency's decision.'" Blanchard, 461 N.J. Super. at 239 (alteration in original) (quoting Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 191 (App. Div. 2010)). Instead, "[w]e are constrained to engage in a 'careful and principled consideration of the agency record and findings.'" Ibid. (quoting Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000)).

III.

Nixon contends the DOC wrongly withheld his videos and failed to provide him a meaningful appeal before a DOC administrator. To give context to the issues Nixon presents on appeal, we first address the governing statutory framework for the DOC's monitoring and confiscation of video and photographic correspondence.

The DOC adopted N.J.A.C. 10A:18-2.14 to assist in regulating correspondence inmates receive. Subsection (a)(6) reads in pertinent part:

> (a) Any correspondence for an inmate may be withheld in the mail room or taken from an inmate's possession by the correctional facility Administrator, designee, or custody staff if it falls within one of the following categories:
>
> . . . .
>
> 6. The correspondence contains material, which, based upon the experience and professional expertise of correctional administrators and judged in the context of a correctional facility and its paramount interest in maintaining safety, security, order, and rehabilitation:
>
>> i. Taken as a whole, appeals to a prurient interest in sex;
>>
>> ii. Lacks, as a whole, serious literary, artistic, political, or scientific value;
>>
>> iii. Depicts, in a patently offensive way, sexual conduct, including patently offensive representations or descriptions of ultimate sexual acts, masturbation, excretory functions, lewd exhibition of the genitals, child

pornography, sadism, bestiality or
masochism.[4]

[N.J.A.C. 10A:18-2.14(a)(6)(i) to (iii) (2022).]

While Nixon maintains that the videos did not fall within one of the prohibited categories warranting their withholding, he does not contest that the DOC is permitted to monitor the content of any correspondence that inmates purchase through the JPay kiosk system. See N.J.A.C. 10A:18-2.6(a) (2022) ("Each piece of incoming correspondence shall be . . . inspected by designated correctional facility staff."). We note our Supreme Court has long recognized the DOC's regulations concerning the inspection of incoming materials suspected of being contraband or containing disapproved content serve the legitimate penological interest of security. See In re Rules Adoption Regarding Inmate Mail to Attys., 120 N.J. 137, 148 (1990). Moreover, inmates have no right to receive obscene materials. Miller v. California, 413 U.S. 15, 23 (1973)

---

[4] We note on April 24, 2023, the DOC adopted an amendment to N.J.A.C. 10A:18-2.14(a)(6)(iii), which became effective June 5, 2023, providing greater specificity regarding the correspondence that may be withheld or taken from an inmate. The amendment added the language "extreme close-up photos, any touching, manipulation, spreading, or opening of the genitals or buttocks (any gender), pornography, or sexually explicit material." Ibid. While we have considered the applicable code at the time of the alleged correspondence violations, we note defendant has not objected to the application of the amended code, ostensibly because the amended code would not change the application of what is considered lewd, obscene, or sexually explicit correspondence.

("[O]bscene material is unprotected by the First Amendment."). We also recognize that an authorized DOC final decision, rejecting correspondence that contains prohibited material, is afforded deference based on the DOC's "experience and professional expertise" and "interest in maintaining safety, security, order, and rehabilitation." N.J.A.C. 10A:18-2.14(a)(6) (2022).

We turn to address Nixon's contention that he was deprived of a meaningful appeal of the lieutenant's amended final decision before a DOC administrator. He specifically argues that the DOC "disregarded [his] appeal[] and failed to address the merits of the appeal." After we granted the DOC's motion to remand to supplement the record and amplify its decision, Falvey advised Nixon by letter that his matter was "under review by the Custody Review Team." After the lieutenant issued his amended final decision on April 12, 2023, which copiously detailed the reasons for prohibiting each video, Nixon filed an appeal to Falvey. Nixon contends that he filed a grievance to Falvey on April 21, 2024 seeking a review of the lieutenant's amended final decision as against the DOC's policies. On June 18, Falvey notified Nixon that the lieutenant's final decision represented the DOC's final agency decision, and Nixon had "the option to appeal to the Appellate Division." Nixon was foreclosed from a further appeal before a DOC administrator.

Relevantly, N.J.A.C. 10A:18-2.16 (2022) sets forth the "[p]rocedures for handling withheld correspondence." After a DOC staff member has determined an inmate's correspondence violated a provision of N.J.A.C. 10A:18-2.14 (2022), and a shift commander has agreed, the staff member is to provide the inmate, "within 72 hours of the withholding, . . . a written notice that correspondence has been withheld." N.J.A.C. 10A:18-2.16(a)(4), (6) (2022). The written notice must apprise the inmate "of th[eir] right to appeal." N.J.A.C. 10A:18-2.16(a)(6)(iv) (2022).

Further, N.J.A.C. 10A:18-2.18(a) (2022) states that an "inmate may appeal the action of the shift commander to the Administrator within 10 calendar days of the date of notice." Relevantly, "[t]he Administrator or designee, whose title shall not be lower than an Associate Administrator, Assistant Superintendent or Director of Custody Operations, shall consider the appeal." N.J.A.C. 10A:18-2.18(c) (2022). Therefore, we are persuaded by Nixon's procedural argument that he was not afforded his right to appeal to a DOC administrator.

"Fundamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner." Thomas Makuch, LLC v. Township of Jackson, 476 N.J. Super. 169, 187 (App. Div. 2023) (quoting Doe

v. Poritz, 142 N.J. 1, 106 (1995)). "[A]n administrative agency ordinarily must enforce and adhere to, and may not disregard, the regulations it has promulgated." County of Hudson v. Dep't of Corr., 152 N.J. 60, 70 (1997). "[O]nce an agency exercises its discretion and creates the procedural rules under which it desires to have its actions judged, it denies itself the right to violate these rules." Ibid. (alteration in original) (quoting In re Waterfront Dev. Permit, 244 N.J. Super. 426, 434 (App. Div. 1990)). The code specifically provides for an appeal, not simply reconsideration by the same DOC representative. We thus are constrained to reverse and again remand the matter to the DOC for an authorized administrator to issue a final decision pursuant to N.J.A.C. 10A:18-2.18(c) (2022). On remand, Nixon shall be afforded the opportunity "to submit documents in writing to the Administrator that state that the challenged correspondence does not violate the category indicated in the report." N.J.A.C. 10A:18-2.18(b) (2022). We offer no opinion on the merits of Nixon's arguments with respect to the videos.

To the extent we have not specifically addressed the parties' remaining contentions, we find they lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

12

A-2188-22