**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2018-23

VICTOR RUSS,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted October 6, 2025 – Decided October 23, 2025

Before Judges Natali and Bergman.

On appeal from the New Jersey Department of Corrections.

Victor Russ, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Elizabeth Merrill, Deputy Attorney General, on the brief).

PER CURIAM

Victor Russ, an inmate at the New Jersey State Prison in Trenton, appeals from the February 1, 2024 final agency decision of the New Jersey Department of Corrections (DOC) following a disciplinary hearing. The DOC upheld a Disciplinary Hearing Officer's (DHO) finding of guilt and imposition of sanctions for Russ's commission of prohibited act *.215, possession with intent to distribute or sell prohibited substances such as drugs, intoxicants, or related paraphernalia, in violation of N.J.A.C. 10A:4-4.1(a)(1)(xviii).[1] We affirm.

We glean these facts from the record. On January 15, 2024, Russ failed to clear a metal detector. At that time, Officer Piotr Zemojtel and Sergeant Daniel Bosley were on duty and Officer Zemojtel ordered Russ to empty his pockets. Russ produced a brown paper bag from his pocket, which Sergeant Bosley confiscated. Inside the bag, Sergeant Bosley found: (1) one box of Black and Milds (machine-made pipe tobacco cigar); (2) forty-nine factory sealed packs of 8 mg/2 mg Suboxone (Buprenorphine and Naloxone) sublingual film (a controlled dangerous substance); (3) a handwritten note; (4) a bundle of tobacco; (5) two small bundles of white powder; (6) one zipper baggie of opaque

---

[1] Under N.J.A.C. 10A:4-4.1(a), an inmate who commits a prohibited act "shall be subject to disciplinary action and a sanction . . . imposed by a [DHO]." "Prohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions." Ibid.

powder; (7) five Newport cigarettes; and (8) one small bag containing six orange pills. The handwritten note stated: "When I see you we have to talk[.] It's important[.] I didn't want to hold this so I sent it to you ASAP." Sergeant Bosley ordered a strip search of Russ, but before he could complete it, Russ threw a golf-sized ball of tobacco on the floor.

The DOC charged Russ with prohibited act *.203 (possession of prohibited substances not prescribed, N.J.A.C. 10A:4-4.1(a)(6)(i)) and prohibited act .554 (possession of tobacco products where not permitted, N.J.A.C. 10A:4-4.1(a)(4)(vi)), and referred the charges to the DHO for further action. A hearing was then held on January 22, 2024, at which time the DHO amended the *.203 charge to the *.215 charge. Russ pled guilty to the .554 charge, but not guilty to the *.215 charge.

Russ did not request any witnesses at the hearing, but he explained to the DHO that he did not know what was in the bag, that he would not have walked through the metal detector had he known, and that he believed the substance was tobacco. In a written statement, Russ's counsel substitute argued Russ had been "manipulated and tricked" into transporting the substances in the bag and cited the note as evidence. Counsel substitute also stressed the DOC failed to conduct any laboratory testing to confirm the nature of the substances in the bag. He

3

further argued that the evidence did not establish Russ's intent to distribute or sell the substances, noting the absence of any indication of pricing, quantities, or monetary exchange.

Based on the evidence presented, the DHO rejected Russ's arguments and found him guilty of the *.215 charge and accepted Russ's guilty plea on the .554 charge. The DHO specifically noted Russ had in his possession forty-nine factory-sealed packs of Suboxone, a controlled dangerous substance, which was "entirely too large for personal consumption." The DHO also noted the absence of any evidence contradicting the officers' written reports.

In imposing sanctions, the DHO balanced the guilty finding on the *.215 charge and Russ's plea to the .554 charge against his eight years without prior infractions, while also weighing the DOC's interest in deterring possession with intent to distribute. Based on this assessment, the DHO ordered 270 days in the Restricted Housing Unit, 270 days loss of commutation time, and 365 days of random urine monitoring.

Russ filed an administrative appeal, asserting defendant "had no knowledge of what was in the sealed brown paper bag[,] . . . [and] non[e] of the evidence support a distribution or sell[ing] prohibited substances infraction." Russ argued "[t]he mere presen[ce] of an prohibited substance is not enough to

support this infraction. There is no evidence of pricing, amounts or funds of any kind being exchange[d]." On February 1, 2024, Assistant Superintendent Thurman Miller upheld the guilty finding and sanctions. Assistant Superintendent Miller determined the DHO's decision:

> reveal[ed] compliance with the New Jersey Administrative Code on inmate discipline. . . . There were no issues noted in the DHO process. . . . It [was] noted [defendant] demonstrate[d] maturity by taking full responsibility of [his] actions. . . . The sanction [was] lenient enough and the change [in the charges was] upheld and appropriately applied.

This appeal followed.

Before us, Russ argues that the DOC's final decision was not based on substantial evidence and, therefore, violated his due process rights. He denies he knowingly possessed illegal substances and reprises his claim he had no knowledge of the contents of the sealed bag, which he believed contained only tobacco. He also relies again on the note as evidence that he was unaware of the nature of the substances seized.

Russ also renews his contention the DOC failed to conduct any laboratory tests of the alleged illegal substances as required by N.J.A.C. 10A:3-5.10, 10A:3-5.11(d), and Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231 (App. Div. 2019). Finally, he again maintains the DOC's proofs failed to establish any

5                                                                                    A-2018-23

evidence of "suggested pricing, amounts, or funds (U.S. [c]urrency) being exchange[d]," to support a distribution charge. We disagree with all these arguments.

Our role in reviewing a prisoner disciplinary decision is limited. Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). Generally, the decision must not be disturbed on appeal unless it was arbitrary, capricious, or unreasonable, or lacked the support of "substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980); see also N.J.A.C. 10A:4-9.15(a) ("A finding of guilt at a disciplinary hearing shall be based upon substantial evidence that the inmate has committed a prohibited act.").

"'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Figueroa, 414 N.J. Super. at 192 (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)). In that regard, while we accord deference to the agency, "we will not perfunctorily review and rubber stamp the agency's decision," Balagun v. N.J. Dep't of Corr., 361 N.J. Super. 199, 203 (App. Div. 2003), and we must "engage in a 'careful and principled consideration of the agency record and findings,'" Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (quoting State–

Operated School District of Newark v. Gaines, 309 N.J. Super. 327, 332 (App. Div. 1998)). Nonetheless, we "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 483 (2007)). We also defer to the DOC's expert judgment in matters that "threaten prison safety and security," such as drug possession. Blanchard, 461 N.J. Super. at 238 (citing Hamilton v. N.J. Dep't of Corr., 366 N.J. Super. 284, 289 (App. Div. 2004)).

When reviewing a prison disciplinary matter, we also consider whether the DOC followed the regulations adopted to afford inmates procedural due process. See McDonald v. Pinchak, 139 N.J. 188, 194-95 (1995); Jacobs v. Stephens, 139 N.J. 212, 220-22 (1995). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due [to] a defendant in such proceedings does not apply." Jenkins v. Fauver, 108 N.J. 239, 248-49 (1987) (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974)).

An inmate's more limited procedural rights, initially set forth in Avant v. Clifford, 67 N.J. 496, 525-46 (1975), are codified in a comprehensive set of DOC regulations. See N.J.A.C. 10A:4-9.1 to -9.28. Those rights include an

inmate's entitlement to a limited right to confront and cross-examine adverse witnesses, N.J.A.C. 10A:4-9.14, the opportunity to present witnesses, N.J.A.C. 10A:4-9.13, and, in certain circumstances, the assistance of counsel substitute, N.J.A.C. 10A:4-9.12. These regulations "strike the proper balance between the security concerns of the prison, the need for swift and fair discipline, and the due-process rights of the inmates." Williams, 330 N.J. Super. at 203 (citing McDonald, 139 N.J. at 202).

Applying these principles, we are satisfied there was substantial credible evidence in the record to support the finding of guilt, and Russ was afforded all process he was due. First, substantial evidence supports Russ's possession of the Suboxone, as he had actual possession of the brown bag containing it in his pocket, and his knowledge of its contents can be reasonably inferred. Possession in this context requires "'knowing, intentional control of a designated thing, accompanied by a knowledge of its character.'" Figueroa, 414 N.J. Super. at 192 (quoting State v. Pena, 178 N.J. 297, 305 (2004)). Actual possession occurs when a person has physical control of an object. State v. Morrison, 188 N.J. 2, 14 (2006). Although mere physical control would be insufficient to establish knowledge or intention, here we are satisfied the accompanying circumstances prove Russ knew what was in the bag and intended to control it and contrary to his contention the enclosed note is not exculpatory on the issue.

Indeed, not only did Russ physically carry the bag in his pocket and attempt to hide it, but he also did not deny carrying the Suboxone, whose character, contents and ingredients were easily discernable from its packaging. Moreover, the record is devoid of any proof, other than Russ's conclusory and self-serving statement, that he was unaware the bag contained the Suboxone. The author of the note was neither called as a witness nor was he requested to testify. We also note that Russ attempted to surreptitiously discard other material prior to completion of his strip search. Given these facts, it is reasonable to infer that Russ had actual possession and knowledge of the contents of the bag, including the Suboxone.

We also reject Russ's reliance on Blanchard for the proposition that the DOC's failure to request the state laboratory test the sealed Suboxone supports reversal. First, unlike prohibited act *.204 (use of a prohibited substance, N.J.A.C. 10A:4-4.1(a)(6)(ii)), state laboratory testing is not required to prove the chemical make-up of a prohibited substance related to a *.215 or a *.203 charge. Contrast Blanchard, 461 N.J. Super. at 241 ("[T]he regulation is nonetheless limited to 'specimens' drawn from an inmate's body, such as urine, blood, or saliva, and not substances the inmate actually or constructively possesses."), and N.J.A.C. 10A:3-5.10(a) ("Testing for prohibited substances may be conducted . . . ."), with N.J.A.C. 10A:3-5.10(b) ("Inmates shall be tested

A-2018-23

. . . .").

Second, we are convinced Blanchard is factually distinguishable and thus inapposite. In that case, the DOC contended a field test of "a white powdery substance in a folded or rolled piece of paper that was tucked in a paperback book" found during a search of Blanchard's property was positive for cocaine. Blanchard, 461 N.J. Super. at 236. At his hearing Blanchard "insisted the field test result was a false positive," and maintained the powder was a generic sweetener given to him by a fellow inmate. Blanchard requested "the hearing officer to send the powder to the State Police Laboratory, but the request was denied." Id. at 236-37.

We recognized "[t]he sole issue [was] whether, in a case with a single positive field test of unproved reliability, and no other corroborating evidence, procedural fairness compels a second, confirmatory test, to assure that the field test did not produce a false positive." Id. at 241. We concluded "denying Blanchard a confirmatory test was arbitrary, capricious or unreasonable, and deprived him of a fundamentally fair proceeding under the circumstances." Id. at 248. Those circumstances included:

> The [DOC] did not produce direct or circumstantial evidence of drug possession to supplement the field test result. Searches of Blanchard's person and his cell were fruitless. The [DOC] presented no other witnesses who observed transactions or other indicia of drug

10

possession. . . . Although Blanchard did store the powder in folded or rolled magazine paper inside a book, he apparently possessed the book while in the mailroom, rather than secrete it where it was less susceptible to discovery.

[Id. at 246-47.]

The proofs against Russ presented an entirely different set of circumstances. Other evidence noted by the DHO—staff reports and specifically the photographs—established the substance was Suboxone. That evidence, upon which the DHO explicitly relied, revealed defendant was in possession of forty-nine factory sealed packages of Suboxone. Nothing in Russ's statement, or that submitted by his counsel substitute, alleged those packages had been tampered with, or were not what the sealed packages represented them to be. These materials bear no similarity to the innocuous white powder found in Blanchard's book. Indeed, as noted, the Suboxone was found in a bag Russ was attempting to sneak past the officers. It was not found in a book in the prison mailroom. Based on these undisputed facts, we are satisfied Russ's due process rights were not violated by not testing the Suboxone as there existed substantial evidence in the record supporting the *.215 charge.

Substantial evidence also supports Russ's intent to distribute the Suboxone. As the DOH correctly observed, the forty-nine sealed packages far exceeded the amount for personal use and thus reasonably evidenced an intent

11

to distribute, under the "totality of the relevant circumstances." <u>State v. Rodriguez</u>, 466 N.J. Super. 71, 119 (App. Div. 2021). Indeed, quantity and packaging are relevant factors to this analysis. <u>Ibid.</u>

In sum, we are fully satisfied the proceedings were conducted in accordance with all applicable due process requirements, and the sanctions imposed were commensurate with the severity of the infraction and authorized by the Administrative Code for the *.215 charge.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2018-23